Barbara A. FLYNN, Plaintiff
and Appellant,

v.

James W. LOCKHART, Defendant
and Appellee.

No. 18736.

Supreme Court of South Dakota.

Submitted on Briefs Nov. 29, 1994.

Decided Jan. 25, 1995.

Lonald L. Gellhaus of Williams, Gellhaus & Gerdes, P.C., Aberdeen, and Gary K. Wood of Collins & Ingebritson, P.A., Minneapolis, MN, for plaintiff and appellant.

Robert L. Lewis of Costello, Porter, Hill, Heisterkamp & Bushnell, Rapid City, for defendant and appellee.

KONENKAMP, Justice.

An injured party appeals summary judgment upholding a joint tortfeasor release she earlier signed in a settlement with a separate defendant. We affirm.

## FACTS

James Lockhart invited Barbara Flynn to ride in a horse-drawn buggy owned by Robert Mines. After Lockhart and Mines hitched the rig, Lockhart handled the reins. Apparently the rig was fastened improperly: the buggy hit the horse causing it to kick and buck, throwing off all the passengers, including Flynn and Lockhart.

Flynn and Lockhart together retained the same attorney for their individual claims against Mines for injuries. When Lockhart's suit settled, the attorney negotiated a settlement for Flynn with Mines' insurer, DeSmet Farm Mutual Insurance Company (DeSmet). In a letter dated December 7, 1990, the attorney advised Flynn that he received a check from DeSmet in the amount she authorized for settlement:

> the recovery was negotiated and approved by you on the basis that we would not be suing Jim Lockhart or his insurance company for any damages, and that Mr. Mine's insurance carrier would not be seeking contribution from Jim Lockhart or his insurance carrier.....

> You had further been advised that in the event that you chose to proceed against Jim Lockhart or his insurance carrier, that you would have to retain another attorney, as our office had represented Jim Lockhart in his claim against Robert Mines, and for our office to represent you against Jim Lockhart would be a conflict of interest for us. We had advised you that we would help you find other counsel if you chose to proceed against Mr. Lockhart.

> Being aware of the previously stated admonitions, you advised us to proceed to settle as above-stated.

On December 10, 1990 Flynn signed a release absolving Mines and DeSmet of all claims arising from the accident in exchange for $33,000. The release contained the following clause barring her right of action against joint tortfeasors:

> There are hereby discharged and released not only the persons or corporations spe-

cifically named herein as discharged and released, but also in like manner and to the same extent all other persons and corporations whatsoever such as are classed as joint tortfeasors under [SDCL 15–8–11 through 15–8–22], it being intended hereby to completely bar any right of action against any of such joint tortfeasors whether or not named herein[.]

Flynn signed immediately below the following language in the release:

> This Release contains the ENTIRE AGREEMENT between the parties hereto, and the terms of this Release are contractual and not a mere recital.
>
> I further state that I have carefully read the foregoing Release, know the contents thereof, and sign the same as my own free act.
>
> *CAUTION:* This is a Release. *READ IT* before signing. [Original emphasis.]

Seven months later, represented by a new attorney who had not been involved in the previous negotiations, Flynn brought suit against Lockhart for her injuries in the buggy accident.

In his motion for summary judgment Lockhart asserted that the release discharged him from all claims Flynn may have had against him as a result of the accident. Although she acknowledges knowingly signing the release, Flynn maintains that her former attorney did not warn her that an action against Lockhart would be forever barred, even if she hired a new attorney to prosecute the suit. She denies ever intending to surrender her claims against Lockhart and avers that Lockhart should be estopped from interposing the release as a defense. She also sued her former attorney in a separate action not at issue here. The trial court granted Lockhart's motion for summary judgment. Flynn appeals.

### ANALYSIS

■ In reviewing a grant of summary judgment, we determine if the moving party demonstrated the absence of any genuine issue of material fact and established entitlement to a judgment on the merits as a matter of law. *Paradigm Hotel v. Sioux Falls Hotel,* 511 N.W.2d 567 (S.D.1994); *Werner v. Norwest Bank,* 499 N.W.2d 138, 140 (S.D.1993); *Wilson v. Great Northern Ry. Co.,* 83 S.D. 207, 157 N.W.2d 19, 21 (1968). The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. *Id.; Garrett v. BankWest, Inc.,* 459 N.W.2d 833 (S.D.1990); *Klatt v. Continental Ins. Co.,* 409 N.W.2d 366 (S.D. 1987).

Flynn enumerates multiple reasons why the release she signed should not bar her suit against Lockhart: (1) Lockhart failed to sustain his burden of proof; (2) her attorney misled her; (3) she did not intend to release Lockhart; and (4) the release should be set aside based on mutual mistake. Notably, she neither contests the validity of the release as it applies to Mines and DeSmet nor contends that any party other than her attorney misled her.

■ Lockhart clearly fits within the category of a joint tortfeasor. Joint tortfeasors are defined in SDCL 15–8–11:

> two or more persons jointly or severally liable in tort for the same injury to person or property, whether or not judgment has been recovered against all or some of them.

Thus, unless it is invalid or can be set aside, the release unquestionably bars Flynn's claims against Lockhart. *Cleland v. U.S.,* 874 F.2d 517 (8th Cir.1989).

### 1. *Lockhart's Burden in Proving Release*

■ Flynn ascribes a list of burdens to Lockhart which she alleges he failed to carry: consideration, absence of confusion, absence of mistake, absence of ambiguity, absence of misrepresentation, and absence of fraud. Flynn submits no authority to support her argument that Lockhart has the burden to prove the absence of these things. We disregard legal arguments unsupported by citation to authority. *Corbly v. Matheson,* 335 N.W.2d 347 (S.D.1983).

■ Lockhart's burden was to plead and prove the existence of a valid release. SDCL 15–6–8(c). Lockhart need not prove separate consideration to avail himself of the release;

Mines and DeSmet provided the required consideration. Compelling policy reasons support releases under the Uniform Contribution Among Joint Tortfeasors Act (SDCL 15–8–11 to 15–8–22):

> The defendant who originally procures the release gains nothing if the plaintiff can sue other joint or concurrent tortfeasors. In such a case, the original defendant is left open to claims for contribution and/or indemnity and may wind up having to litigate the case anyway.

*Douglas v. United States Tobacco Co.*, 670 F.2d 791, 794 (8th Cir.1982).

### 2. *Attorney Misrepresentation*

▮ Even though Flynn freely signed the release, she claims her attorney failed to explain all its consequences, noting that she never would have signed it had she known that Lockhart would be discharged. In *Johnson v. Rapid City Softball Ass'n*, 514 N.W.2d 693, 697 (S.D.1994), this Court stated, "A release is not fairly made and is invalid if the nature of the instrument was misrepresented or there was other fraudulent or overreaching conduct." Yet to invalidate a release such wrongful conduct must occur between opposing parties, not between attorneys and their clients. "As a general principle, one who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation, or other wrongful act *by another contracting party*." 17A AM. JUR.2D CONTRACTS § 224 (1991) (emphasis added). *See Johnson v. Allis Chalmers Corp.*, 162 Wis.2d 261, 470 N.W.2d 859, 868 (1991). To allow parties, who freely sign releases of liability, to later disavow the aftermath because they claim their own attorneys misled them, would undermine the orderly resolution of personal injury claims. *Cf. Link v. Wabash Railroad Co.*, 370 U.S. 626, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962). Her attorney's alleged misrepresentation cannot negate the import of Flynn's release.

### 3. *Flynn's Intent in Signing the Release*

▮ Flynn alleges she unintentionally released Lockhart from liability claiming that her attorney led her to believe that the release would not preclude a lawsuit against Lockhart, provided she retained different counsel. She was unaware that the term "joint tortfeasor" applied to Lockhart. The release is unambiguous. *Krambeck v. Sunshine Ins. Co.*, 505 N.W.2d 131, 133 (S.D. 1993); *Enchanted World Doll Museum v. Buskohl*, 398 N.W.2d 149, 151 (S.D.1986). So whatever her attorney may have led her to believe about the release, its terms and not her belief, control. Flynn, therefore, cannot offer her attorney's alleged remarks to her about the release to vary its terms. SDCL 53–8–5; *Carr v. Benike, Inc.*, 365 N.W.2d 4 (S.D.1985); *Ramsdell Constr. v. Aetna Cas. Ins. Co.*, 921 F.2d 741 (8th Cir.1990).

▮ Flynn cites authority for the precept that if an injured party has not received full satisfaction, a release of one tortfeasor discharges no other tortfeasors. *Luxenburg v. Can–Tex Industries*, 257 N.W.2d 804, 807 (Minn.1977). South Dakota codified this rule in SDCL 15–8–17, but it will not apply when a party signs a general release which specifically exonerates all joint tortfeasors. *Cf. Bixler by Bixler v. J.C. Penney Co., Inc.*, 376 N.W.2d 209 (Minn.1985). The unambiguous language of the release Flynn signed left no suggestion that it was intended only as a partial release.

### 4. *Mutual Mistake*

▮ Flynn asserts that she signed the release under a mutual mistake of fact about the full nature and extent of her injuries. She states that she did not know "that the development of hives and rashes arising out of her accident would be permanent" and "that she still had wood and stone imbedded in her skin that would cause her additional pain and suffering." South Dakota has long adhered to the rule that a general release, under certain circumstances, may be voided on the ground of mutual mistake. *Nilsson v. Krueger*, 69 S.D. 312, 9 N.W.2d 783, 786 (1943); *Petersen v. Kemper*, 70 S.D. 427, 18 N.W.2d 294 (1945).

Lockhart responds that Flynn's request to set aside the release fails because (1) she has not sought to rescind it; and (2) the release she signed covered "all known and unknown personal injuries and consequences" resulting from the accident. This Court has specifically held, however, that these are not conclusive impediments to voiding a release

on grounds of mutual mistake. *Boman v. Johnson*, 83 S.D. 265, 158 N.W.2d 528 (1968).

*Boman* permitted an injured party to set aside a release without rescinding because of a "grossly inadequate" settlement made at a time when the seriousness of the injuries were unknown. *Id.* 158 N.W.2d at 530. Unlike *Boman*, though, Flynn seeks only to set aside the release as it pertains to one tortfeasor and not the other. Consequently, she professes a quite illogical position: when she signed the release she was mistaken about the extent of her injuries solely with respect to Lockhart. She was injured in one incident, caused, she alleges, by both Mines and Lockhart. Therefore, her knowledge about her injuries would be the same regardless of with whom she settled. Moreover, Flynn cites no authority for setting aside on mutual mistake a joint tortfeasor release regarding one tortfeasor, but leaving it intact for another. Potential claims for indemnity and contribution make such an arrangement impossible, and unfair, considering that not being parties to this action, Mines and DeSmet could not forestall reopening their exposure to liability.

Affirmed.

MILLER, C.J., SABERS and AMUNDSON, JJ., and WUEST, Retired Justice, concur.