1996 SD 19

**Jodi PARKHURST, Plaintiff and Appellant,**

v.

**Thomas BURKEL, Defendant and Appellee.**

**No. 19244.**

Supreme Court of South Dakota.

Considered on Briefs on Jan. 9, 1996.

Decided Feb. 28, 1996.

GILBERTSON, Justice.

[¶ 1] Jodi Parkhurst appeals from summary judgment in favor of Defendant Thomas Burkel. Finding no genuine issue of material fact and that Burkel is entitled to judgment as a matter of law, we affirm.

## FACTS AND PROCEDURE

[¶ 2] On July 9, 1992, Parkhurst and Burkel were involved in an auto accident in which Parkhurst incurred damage to her vehicle and suffered personal injuries. On March 22, 1993, eight months after the accident, Parkhurst released Burkel from any and all claims in exchange for $1,000. Parkhurst's medical and vehicle expenses had been paid by agreement between Burkel's insurance company and Parkhurst's insurance company prior to and separately from the March 1993 release.[1]

[¶ 3] In July 1993, Parkhurst was diagnosed as having a chip fracture in her right hip. Corrective surgery was performed the following month. On September 15, 1993, Parkhurst commenced legal action against Burkel to recover additional damages for personal injuries she claimed were caused in the July 9, 1992 auto accident. Parkhurst claims to have incurred approximately $8,240.00 in additional medical expenses since the March 1993 release which she attributes to the July 1992 accident.

[¶ 4] Burkel moved for summary judgment following discovery. On May 15, 1995, the trial court heard and granted Burkel's motion. Summary judgment was entered May 17, 1995. Parkhurst appeals.

Renee H. Christensen, Sioux Falls, for plaintiff and appellant.

Roy A. Wise of Richardson, Groseclose, Wyly, Wise & Sauck, Aberdeen, for defendant and appellee.

## ISSUE

[¶ 5] Whether rescission of a contract designated as a release is permitted upon an unilateral mistake based upon misunderstanding of the consequences of an injury?

1. Burkel informs this Court that Parkhurst's insurer initially paid her $2,000 of medical payment coverage as well as $59.00 and $284.00 for care provided by two physicians. Her insurer also paid for the damage to her vehicle, less a $500.00 deductible. In return for Parkhurst's signature on the release, Burkel's insurer paid Parkhurst $1,000 for her personal injury claim plus $500.00 to cover her insurer's deductible. Burkel's insurer and Parkhurst's insurer worked out a settlement regarding other claims previously paid by Parkhurst's insurer. Parkhurst does not dispute this information.

## STANDARD OF REVIEW

[¶ 6] Our standard of review on a motion for summary judgment is well settled. We must determine:

whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. Our task on appeal is to determine whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of summary judgment is proper.

*Henry v. Henry*, 534 N.W.2d 844, 846 (S.D. 1995) (quoting *Farmers & Merchants State Bank v. Teveldal*, 524 N.W.2d 874, 877 (S.D. 1994)) (quoting *Mooney's v. S.D. Dep't of Transp.*, 482 N.W.2d 43, 45 (S.D.1992)).

## ANALYSIS AND DECISION

[¶ 7] Parkhurst claims the trial court erred in granting Burkel's motion for summary judgment because whether her right hip chip fracture was an unknown injury at the time she signed the release is a genuine issue of material fact, thereby precluding summary judgment. Parkhurst claims a mistake of fact.

[¶ 8] The release signed by Parkhurst on March 22, 1993 reads as follows:

I, Jodi Ransom Parkhurst, in consideration of the payment of one thousand dollars hereby release and forever discharge Carl Burkel and Thomas Burkel from any and all claims whatsoever arising from an accident, occurrence or loss on or about July 9, 1992 at or near Beach Street and Fourth Street, Huron, South Dakota. It is expressly agreed that this release and payment of said sum is not to be construed as an admission of liability. This is a full and final release and satisfaction of all claims.

[¶ 9] It is significant to note that when Parkhurst signed the release she was eight months pregnant. A baby girl was born to her approximately one month later. Parkhurst states that her chip fracture was not diagnosed until July of 1993, three months after giving birth.

[¶ 10] Prior to the date of this diagnosis, however, Parkhurst had been having pain in her right hip and leg. At deposition, Parkhurst admitted that in October or November of 1992, some three to four months after the accident and five to six months before she executed the release, she was having severe pain in her right hip and her "leg locks up." Between July 1992 and July 1993 she was seen by several doctors, and reported to some of them that her hip and leg pain began in February and early March 1993. Dr. David Hoversten, who made the chip fracture diagnosis and performed the corrective surgery on Parkhurst, wrote the following in his office notes on July 26, 1993: "Jody is a pleasant 29 year old here with pain in her right hip which has been there a year since she was in a car wreck." Clearly, this pain was known to Parkhurst prior to the March 22, 1993 execution of her release of claim for injuries arising from the July 1992 accident.

[¶ 11] Parkhurst acknowledges her awareness of the pain but states her physicians had assured her it was related to her pregnancy. Armed with this information, Parkhurst signed her release of claims. When the pain persisted after her baby was born, she sought out various physicians in search of a diagnosis and relief for the pain in her right hip and leg. Parkhurst claims her reliance on her physicians' assurance that the pain was pregnancy related was a mistake in fact that precludes any binding effect of the March 1993 release.

[¶ 12] This court has consistently indicated it favors the compromise and settlement of disputed claims outside of court. *Flynn v. Lockhart*, 526 N.W.2d 743, 746 (S.D. 1995); *Johnson v. Norfolk*, 76 S.D. 565, 82 N.W.2d 656, 660 (S.D.1957). Settlements and releases are contractual agreements subject to rescission under the same grounds as any other contract, including mistake of fact. *Nilsson v. Krueger*, 69 S.D. 312, 9 N.W.2d 783 (1943).

[¶ 13] The trial court found Parkhurst's reliance on her physicians' determination that her pain was related to her pregnancy to

be a unilateral mistake and not attributed to Burkel in any way. The court held that under *Petersen v. Kemper*, 70 S.D. 427, 18 N.W.2d 294 (1945), SDCL 20–7–11 did not apply, and the release was valid and therefore Parkhurst's claim barred by law.

[¶ 14] SDCL 20–7–11 provides that "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." In 1945, we interpreted the predecessor to this statute[2] and thereby distinguished between claims resulting from unknown or unsuspected injuries and claims resulting from the unknown consequences of a known injury. *Petersen*, 18 N.W.2d at 296–97. We held that neither the statute, nor equity, applied to "aftereffects or unexpected consequences of injuries known to exist at the time the release was made. As to them the release is binding and conclusive, subject to legal and equitable defenses applicable to contracts generally." *Id.*, 18 N.W.2d at 297.

[¶ 15] The facts of *Petersen* are that Sena and Frank Petersen were injured when the car in which they were riding collided with a vehicle driven by C.E. Kemper. Petersens claimed damages for their personal injuries resulting from the accident. Approximately seven months after the accident, the Petersens settled their claims against Kemper and signed a release. Less than three months later, Frank Petersen died and his widow brought an action against Kemper under the wrongful death statute. Sena Petersen claimed she did not know or suspect she would have a claim for wrongful death at the time she executed the release and therefore the release did not extend to include this action. This Court found Sena Petersen did not have a valid claim for damages as the death of her husband was "an aftereffect, an unexpected consequence of injuries which, it must be assumed on this appeal, were known

by her to exist when she signed the release." *Id.* We cited the rule as follows:

'Where, as they did here, the parties make a settlement by which, in consideration of the payment of a specified sum, all claims for damages, then existing or thereafter arising on account of the injuries sustained in the accident, are satisfied and discharged, the settlement is binding and conclusive, although subsequent events disclose that the injuries produced effects which were neither known nor anticipated when the settlement was made. *The parties are presumed to have had in mind the uncertainty as to the after effects of the injuries, and to have elected to make a final settlement which should be binding and conclusive whether such after effects should prove to be either more or less serious than anticipated[.]*

This was not an unknown injury, but an unknown and unexpected consequence of the injury, and does not bring the case within the rule. To avoid such a release, the rule requires clear and convincing proof that a substantial injury, *which was not discovered until after the settlement,* had in fact been sustained in the accident and existed at the time of the settlement. That unknown and unexpected consequences resulted from known injuries is not sufficient.'

*Id.* (quoting *Richardson v. Chicago, M. & St. P. Ry. Co.*, 157 Minn. 474, 196 N.W. 643, 644 (1924)) (emphasis added).

[¶ 16] Parkhurst's reliance upon *Boman v. Johnson*, 83 S.D. 265, 158 N.W.2d 528 (1968), is misplaced as *Boman* is factually distinguishable from the instant case. In *Boman*, the plaintiff exchanged her release for an unconscionably low amount nearly contemporaneous to the auto accident. The plaintiff was permitted to bring a personal injury action against the defendant notwithstanding the signed release. This Court affirmed judgment for the plaintiff, relying on the premise that compensation for the release was so minimal a question of fact arose as to

---

2. The predecessor statute is SDC 47.0241 and was virtually identical to the present-day statute, to wit:

A general release does not extend to claims which the creditor does not know or suspect to

exist in his favor at the time of executing the release, which if known to him must have materially affected his settlement with the debtor.

whether unknown injuries existed which were not within the parties' contemplation when they entered into the settlement.

[¶ 17] Herein, Parkhurst's injury was certainly discovered by her prior to the March 1993 release. Contrary to the selective recitation of the facts in Parkhurst's brief to this Court, a review of the record indicates she described her injury to no less than six different medical providers, attributing the commencement of the symptoms to a time prior to her executing the release. As explained above, she was told the pain could be pregnancy related, the result of pressure on the sciatic nerve. Parkhurst claims this mistake allows her to avoid the release. This Court has long held that, under certain circumstances, a general release may be voided on grounds of mutual mistake. *Flynn*, 526 N.W.2d at 746 (citing *Petersen*, 18 N.W.2d 294). The mutuality, however, must be between opposing parties, and Parkhurst fails to demonstrate any mistake attributable to Burkel.

[¶ 18] The Nebraska Court of Appeals recently addressed the effect of undiagnosed injuries on releases in a case factually similar to the one now before us. *Morton v. Farmers Co-Op. Business Ass'n*, 1 Neb.App. 552, 510 N.W.2d 326 (1993). In *Morton*, the appellate court held that no mutual mistake regarding the nature and extent of injuries was shown which would permit a release to be avoided where the plaintiff's condition remained unchanged from the date of the accident and since the date of the release, and the only difference pre- and post-release was that the plaintiff found a physician who diagnosed her symptoms. *Id.* at 329. We agree with and adopt that court's reasoning.

[¶ 19] Likewise, the evidence in the present case does not establish that Parkhurst's injuries were any different when she filed this action than when she executed the release. As stated above in *Petersen*, avoiding a release involves "clear and convincing proof [of] a substantial injury which was not discovered until after the settlement[.]" Parkhurst's injury was discovered prior to the March 1993 settlement according to her own testimony. She cannot rise above her prior testimony to now claim a better version of

the facts. *Parsons v. Dacy*, 502 N.W.2d 108, 111 (S.D.1993) (citing *Dartt v. Berghorst*, 484 N.W.2d 891, 897 (S.D.1992)). A misdiagnosed injury does not equate with "unknown injury" as contemplated by SDCL 20-7-11 any more than misrepresentation as to the effect of the release given by a party's own attorney. *Flynn*, 526 N.W.2d at 746. Parkhurst's diagnosis and subsequent surgery represent the unexpected consequences of known injuries and cannot act to invalidate her release.

[¶ 20] We affirm.

[¶ 21] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.

