2004 SD 23

**FENSKE MEDIA CORPORATION,**
Plaintiff and Appellant,

v.

**BANTA CORPORATION,** Defendant
and Appellee.

No. 22922.

Supreme Court of South Dakota.

Considered on Briefs Jan. 12, 2004.

Decided Feb. 18, 2004.

Robert Gusinsky of Lynn, Jackson, Shultz & Lebrun, Rapid City, South Dakota, Attorneys for plaintiff and appellant.

Michael P. Reynolds of Barker, Wilson, Reynolds & Burke, Rapid City, South Dakota, Attorneys for defendant and appellee.

KONENKAMP, Justice.

[¶ 1.] We are confronted with the question whether the circuit court acted properly in dismissing this case under SDCL 15–6–12(b)(5) on the ground that plaintiff had signed a release in an earlier lawsuit against the same defendant, resulting in the dismissal of that lawsuit with prejudice. Because the plaintiff's allegations, taken as true, fail to state any viable legal theory to overcome the broad language of the release, we affirm.

### Background

[¶ 2.] Fenske Media Corporation and Banta Corporation contracted for Fenske to print textbooks. The total value of the contract was $102,268.32. Unknown to Fenske, Banta was acting as an agent for an undisclosed principal, Xyan.com, Inc. Upon completion of the printing order, however, Banta informed Fenske that the textbooks should be shipped to Xyan.

[¶ 3.] Between January 3 and February 20, 2001, Xyan paid Fenske $77,268.32 of the amount due, leaving $25,000 unpaid. On March 31, 2001, Xyan filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

[¶ 4.] On May 30, 2001, Fenske sued Banta for the unpaid balance. Subse-

quently, on July 13, 2001, Fenske and Banta signed a Mutual Release of All Claims. Under this settlement, Banta agreed to pay Fenske the unpaid balance of $25,000. The release provided in part:

WHEREAS, a dispute has risen between the parties arising out of the parties' prior business dealings.

WHEREAS, Banta and Fenske desire to settle such dispute and all other issues in controversy between them relating to or arising out of the dispute and any other matters between them of any kind, upon the terms and conditions herein set forth, and deem such settlement to be in their best interests in order to avoid the expense, inconvenience, and distraction of litigation.

NOW, THEREFORE, Banta and Fenske agree as follows:

1. In consideration of the mutual understandings, covenants and agreements set forth herein, and subject to the full and complete performance thereof, Banta and Fenske agree that all claims, liabilities, obligations, causes of action, and controversies arising out of the dispute and/or any other matter between them are hereby settled.

* * *

3. This instrument constitutes and contains the entire understanding and agreement between the parties concerning the subject of this release and supersedes all prior negotiations, agreements or understandings between the parties.

4. Fenske hereby releases and discharges Banta, its predecessors, successors, affiliates, and assigns ... from any and all claims, liabilities, obligations, and causes of action of any kind, whether known or unknown, which Fenske may now or hereafter possess which in any way relate to any goods or services provided by Fenske to Banta prior to the Effective Date.

* * *

6. Banta agrees to pay Fenske the sum of $25,000.

* * *

On July 26, 2001, with the release having been executed, the circuit court granted Banta's motion to dismiss with prejudice.

[¶ 5.] Several months after the release was signed, Xyan brought a complaint against Fenske in the United States Bankruptcy Court to avoid the preferential transfer of $77,268.32. Xyan had paid the sum within ninety days of its bankruptcy filing. *See* 11 USC 547(b)(5). In November 2002, Fenske agreed to return to Xyan $50,000 of the amount.

[¶ 6.] Now with a $50,000 shortfall, Fenske commenced this action against Banta. In its pleading, Fenske alleged that Banta, as an agent for an undisclosed principal, was liable for the shortfall. Banta moved to dismiss under SDCL 15–6–12(b)(5). The circuit court ruled that the release coupled with the earlier dismissal with prejudice precluded Fenske from maintaining this new action against Banta. Fenske appeals questioning "[w]hether the trial court should have dismissed Fenske's complaint for failure to state a claim for which relief can be granted on the basis of a release executed in another case."

### Analysis and Decision

[¶ 7.] We review de novo a trial court's dismissal of a claim under SDCL 15–6–12(b)(5). *Osloond v. Farrier,* 2003 SD 28, ¶ 4, 659 N.W.2d 20, 22 (citing *City of Colton v. Schwebach,* 1997 SD 4, ¶ 8, 557 N.W.2d 769, 771). In evaluating a complaint, the court must accept the material allegations as true and construe them in a light most favorable to the pleader and

determine whether the allegations allow relief on "any possible theory." * *Schlosser v. Norwest Bank South Dakota, N.A.*, 506 N.W.2d 416, 418 (S.D.1993) (citation omitted). "[P]leadings should not be dismissed merely because the court entertains doubts as to whether the pleader will prevail in the action as this is a matter of proof, not pleadings. The rules of procedure favor the resolution of cases upon the merits by trial or summary judgment rather than on failed or inartful accusations." *Thompson v. Summers*, 1997 SD 103, ¶ 6, 567 N.W.2d 387, 390 (quoting *Janklow v. Viking Press*, 378 N.W.2d 875, 877 (S.D. 1985)). Motions to dismiss under Rule 12(b)(5) test only the legal sufficiency and not the facts of the pleading. *Stumes v. Bloomberg*, 1996 SD 93, ¶ 6, 551 N.W.2d 590, 593 (citation omitted). Such motions are viewed with disfavor and seldom prevail. *Thompson*, 1997 SD 103, ¶ 5, 567 N.W.2d at 390.

■■■■ [¶ 8.] Releases are contractual agreements. *Parkhurst v. Burkel*, 1996 SD 19, ¶ 12, 544 N.W.2d 210, 212. Because contract interpretation presents a question of law, our standard of review is de novo. *Auto Owner Ins. Co. v. Enterprise Rent–A–Car Co.–Midwest*, 2003 SD 52, ¶ 7, 663 N.W.2d 208, 209–210. It is well settled that in interpreting a contract, we rely on the language of the contract to ascertain the intent of the parties. *Carstensen Contracting, Inc. v. Mid–Dakota Rural Water Sys., Inc.*, 2002 SD 136, ¶ 8, 653 N.W.2d 875, 877. Where possible, we must give meaning to all the provisions of a contract. *Id.*

■■■ [¶ 9.] Fenske asserts that the language of the release provides a legal theory on which it may proceed. Specifi-

cally, Fenske argues that the fourth provision of the release demonstrates that the parties only intended to cover "any goods or services provided by Fenske to Banta." Because the current claim involves only "goods or services provided by Fenske to Xyan," Fenske reasons that the claim is not covered by the express language of the release. We cannot support such a tenuous interpretation.

[¶ 10.] When read as a whole, the release provides but one reasonable and consistent interpretation of the parties' intentions. The first declaration in the release states, "WHEREAS, a dispute has risen between the parties arising out of the parties' prior business dealings." This language encompasses the matters the parties intended to discharge through the release. It includes "the parties' prior business dealings." This intention is manifested in the provision of the release that states "all claims liabilities, obligations, causes of action, and controversies *arising out of the dispute* ... are hereby settled." When this language is considered with the broad language of the fourth provision declaring that Banta be released from all claims "which *in any way relate to* any goods or services provided by Fenske to Banta," the only consistent and reasonable interpretation that can be drawn is that Banta and Fenske intended Banta to be released from all claims arising from their dispute. Certainly, that prior dispute involved the agreement between Fenske and Banta, when Banta acted as an agent for Xyan.

[¶ 11.] Fenske next argues that if Banta intended the release to cover "goods and services provided by Fenske to Xyan" then it should be permitted to proceed on

---

* The federal courts hold likewise in interpreting Rule 12(b)(6), identical to our Rule 12(b)(5). *See, e.g., Grider v. Texas Oil & Gas Corp.*, 868 F.2d 1147, 1148 (10thCir.), cert. denied, 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989) ("beyond doubt" that nonmovant "can prove no set of facts").

a theory of either mutual mistake or fraud. Fenske asserts that it may establish that (1) "Banta made a mistake when it wrote [in the release] 'goods and services provided by Fenske to Banta,'" or (2) "Banta misrepresented to whom the goods and services were truly destined, knowing that Xyan would file for bankruptcy protection and therefore avoid full payment." We note initially that Fenske's complaint does not allege any instances of fraud or mistake. SDCL 15–6–9(b) provides, "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally."

[¶ 12.] Furthermore, the fraud theory falls short. For a theory based upon fraud to succeed, it is not enough that one party intend to defraud another. *Cleveland v. BDL Enterprises, Inc.*, 2003 SD 54, ¶ 26, 663 N.W.2d 212, 220. It is also necessary that the fraudulent behavior induced the other party to act to its detriment. *Id.* Fenske does not dispute that it was aware that Xyan, not Banta, was the principal several months before it released Banta. As such, it is plain that the previous existence of an undisclosed principal did not induce Fenske to enter into the release. Therefore, Fenske's allegation does not provide a legal theory upon which it may proceed.

[¶ 13.] Fenske also proposes that it may proceed on a theory of mutual mistake. This assertion rests on the notion that the relief Fenske seeks in the current action was at the time of the release an "unknown claim." Fenske argues that a general release does not extend to unknown claims. This theory is based on SDCL 20–7–11, which provides:

A general release does not extend to claims which the creditor does not know

or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.

In response, Banta argues that the language of the release that "all claims, liabilities, obligations, and causes of action of any kind, whether known or *unknown*" clearly bars such claims.

[¶ 14.] In *Boman v. Johnson*, 83 S.D. 265, 266, 158 N.W.2d 528 (1968), a plaintiff claimed to have an unknown substantial injury, and therefore, the injury was not within the contemplation of the parties when they signed the release. In construing SDC 47.0241, the predecessor of SDCL 20–7–11, the trial court reasoned that a "release would not preclude recovery for injuries not known or suspected to exist when the settlement was agreed upon." *Boman*, 83 S.D. at 267, 158 N.W.2d at 530. In affirming, this Court cited with approval language in *Aronovitch v. Levy*, 238 Minn. 237, 56 N.W.2d 570 (1953), concluding that a release expressly covering unknown injuries does not present a bar "to an action for such unknown injuries if it can be shown that such unknown injuries were not within the contemplation of the parties when the settlement was agreed upon but that, if the parties did in fact intentionally agree upon a settlement for unknown injuries, such release will be binding." *Boman*, 158 N.W.2d at 530.

[¶ 15.] Our rationale in *Boman* was reaffirmed in *Flynn v. Lockhart*, 526 N.W.2d 743 (S.D.1995). In that case, the plaintiff signed a release absolving the defendant of all claims arising from an accident. *Id.* at 744. In a motion for summary judgment, the defendant asserted that the release signed by the plaintiff precluded her from bringing a claim resulting from the accident. *Id.* While in *Flynn* we eventually determined that summary judgment was appropriate, we stated that "South Dakota

has long adhered to the rule that a general release, under certain circumstances, may be voided on the ground of mutual mistake." *Id.* at 746 (citation omitted). We further noted that even where the language of a release purports to bar "all known and unknown" claims, such language is "not [a] conclusive impediment[ ] to voiding a release on grounds of mutual mistake." *Id.* at 746–47. Finally, in *Parkhurst,* we recognized that a release may be avoided where a plaintiff showed "clear and convincing proof of a substantial injury which was not discovered until after settlement." 1996 SD 19, ¶ 19, 544 N.W.2d at 214 (citation omitted).

[¶ 16.] Nonetheless, for a claim of mutual mistake to prevail in these circumstances, it is necessary to distinguish between claims involving unknown injuries and claims involving unknown consequences of known injuries. *Id.* ¶ 14 (citing *Petersen v. Kemper,* 70 S.D. 427, 18 N.W.2d 294, 296–97 (1945)). Fenske's current action entails the latter. Fenske's complaint clearly establishes that its injuries were no different when it filed this action than when it earlier executed the release. Fenske's initial action against Banta and its current action stem from the same injury, Xyan's failure to completely satisfy the debt it owed to Fenske. While Fenske may have been unaware of all of the consequences of that injury, it was nonetheless aware of the injury.

[¶ 17.] While the burden is light to overcome motions to dismiss for failure to state a claim, plaintiffs must show entitlement to relief through some viable legal theory. Fenske has not met that burden. The language of the release covers the injury Fenske now claims it suffered. Fenske was aware of that injury before signing the release, even if it was not aware of all the consequences it might suffer as a result of that injury. Further-

more, Fenske has not specifically alleged facts to show that it was induced into signing the release by fraudulent behavior. Thus, we are satisfied that the circuit court did not err when it dismissed Fenske's complaint for failure to state a claim.

[¶ 18.] Affirmed.

[¶ 19.] GILBERTSON, Chief Justice, and ZINTER and MEIERHENRY, Justices, and MILLER, Retired Justice, concur.

[¶ 20.] MILLER, Retired Justice, sitting for SABERS, Justice, disqualified.