#24579-a-JKK

**2008 SD 89**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

BECKY GRUHLKE,                                    Plaintiff and Appellant,

v.

SIOUX EMPIRE FEDERAL CREDIT
UNION, INC., and CU MORTGAGE
DIRECT, LLC,                                      Defendants,

and

DAVID BEDNAR, Individually,                       Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
LINCOLN COUNTY, SOUTH DAKOTA

* * * *

HONORABLE BRADLEY G. ZELL
Judge

* * * *

RICHARD D. CASEY
RYLAND DEINERT of
Lynn, Jackson, Shultz & Lebrun, PC          Attorneys for plaintiff
Sioux Falls, South Dakota                   and appellant.

ERIC C. SCHULTE of
Davenport, Evans, Hurwitz &
 Smith, LLP                                 Attorneys for defendant
Sioux Falls, South Dakota                   and appellee.

* * * *

ARGUED ON MARCH 28, 2008

OPINION FILED **09/10/08**

#24579

KONENKAMP, Justice

[¶1.]     As part of her wrongful termination and breach of contract suit against her company, plaintiff also sued a company officer. She asserted that the company officer, to advance his own interests, tortiously interfered with her contractual relationship by advocating for the nonrenewal of her employment contract. Ruling that no such cause of action could be brought against a company officer, the circuit court granted the officer's motion to dismiss. We conclude that in the employment context, under limited circumstances, an action for intentional interference with contractual relations against a corporate officer can be maintained in South Dakota. Plaintiff, however, failed to plead a cause of action sufficient to meet the requirements for bringing the claim. Accordingly, we affirm.

**I.**

[¶2.]     Because this action was dismissed for failure to state a claim upon which relief can be granted, under our standard of review, we must accept as true the following facts alleged in the complaint. CU Mortgage employed Becky Gruhlke as a senior mortgage underwriter. She was hired in January 2004, with an employment contract renewable annually. CU Mortgage renewed her contract in 2004 and 2005, but did not renew it thereafter. The renewal clause stated: "This Agreement shall be renewed with the same provisions for additional one-year terms, unless either party gives written notice of termination thereof to the other party at least thirty (30) days prior to the end of any such term." As Gruhlke's complaint acknowledged, the "contract was essentially a one year employment-at-will agreement."

-1-

[¶3.] Gruhlke brought suit against Sioux Empire Federal Credit Union and CU Mortgage Direct alleging wrongful discharge and breach of contract. She also sued David Bednar, the chief operating officer at CU Mortgage, alleging "wrongful interference with [her] business relationship/contract." This appeal addresses only the suit against Bednar.

[¶4.] In her complaint, Gruhlke averred that Bednar "acted intentionally and was unjustified in his actions" and "acted out of his personal interests" when he "advocated for the termination of Gruhlke's business relationship with CU Mortgage." According to Gruhlke, Bednar asked her to submit false and misleading information to investment mortgage companies in order to secure financing for certain home loans. When she refused, Bednar "yelled at her and tried to intimidate her into complying with his requests." Gruhlke reported Bednar to her direct supervisor. In December 2006, CU Mortgage chose not to renew Gruhlke's employment contract.

[¶5.] Bednar moved to dismiss under SDCL 15-6-12(b)(5), arguing that South Dakota does not recognize a cause of action against a company officer for tortious interference with a business relationship or expectancy. He relied on our language in *Mueller v. Cedar Shore Resort, Inc.,* in which we considered "whether the officer or director may be held personally liable in a tortious interference claim where the director or officer acted in bad faith or outside the scope of employment." 2002 SD 38, ¶35, 643 NW2d 56, 68. According to Bednar, we refused to recognize such a cause of action. Gruhlke, on the other hand, contended that when an officer

acts outside the scope of employment, South Dakota should allow a claim for tortious interference with a contractual relationship.

[¶6.]     The circuit court granted Bednar's motion to dismiss, concluding that South Dakota does not recognize the cause of action, regardless of whether the officer acted outside the scope of employment.  Gruhlke now appeals.

## II.

[¶7.]     In general, the tort of intentional interference with contractual relations serves as a remedy for contracting parties against interference from outside intermeddlers.  To prevail on a claim of tortious interference, "there must be a 'triangle' – a plaintiff, an identifiable third party who wished to deal with the plaintiff, and the defendant who interfered with" the contractual relations.  *Id.* ¶38 (quoting Landstrom v. Shaver, 1997 SD 25, ¶75, 561 NW2d 1, 16).  South Dakota has long recognized this tort.  *See* Lien v. Nw. Eng'g Co., 73 SD 84, 88, 39 NW2d 483, 485 (1949); *see also* Tibke v. McDougall, 479 NW2d 898, 908 (SD 1992); Groseth Int'l, Inc. v. Tenneco, Inc., 410 NW2d 159, 172 (SD 1987).

[¶8.]     In this case, we must decide the narrower question:  whether South Dakota will recognize a cause of action against a corporate officer for tortious interference with the corporation's employment contract with another.  Only then can we determine whether Gruhlke has adequately pleaded the action.  In *Nelson v. WEB Water Dev. Ass'n*, we wrote that an officer acting within the scope of employment cannot be liable for tortious interference when the officer discharges an employee.  507 NW2d 691, 700 (SD 1993).  Actions of an officer within the scope of

employment are intrinsically the actions of the corporation itself, and therefore, there is no identifiable third party.

[¶9.] In limited circumstances, many jurisdictions allow contractual interference claims against corporate officers for interference with corporate employee contracts. *See generally*, Thomas G. Fischer, *Liability of Corporate Director, Officer, or Employee for Tortious Interference with Corporation's Contract with Another*, 72 ALR4th 492 (1989).[1] According to Bednar, however, our statement in *Mueller* that "[w]e decline to recognize such a claim" means that we expressly rejected any suit against an officer of a corporation for tortious interference of a business relationship under any circumstances. *See* 2002 SD 38, ¶35, 643 NW2d at 68. This language was only expressed in relation to the plaintiffs' failure to support their claim, as all the actions of the defendants were done within the scope of their authority.[2] Our writing in *Mueller* should not be construed to foreclose such suits in every instance.

---

1. Courts around the country are not in complete agreement over how such an action should be pleaded and proved. Gary Myers, *The Differing Treatment of Efficiency and Competition in Antitrust and Tortious Interference Law*, 77 MinnLRev 1097, 1099 (1993) ("tortious interference law suffers from considerable doctrinal confusion"); *see also* Alex Long, *The Disconnect Between At-Will Employment and Tortious Interference with Business Relations: Rethinking Tortious Interference Claims in the Employment Context*, 33 ArizStLJ 491 (Summer 2001). In this opinion, we endeavor to clarify the limited circumstances in which a corporate contract interference action may be brought against a corporate officer by an employee of the corporation.

2. In *Case v. Murdock*, we made a similar declaration that "[i]n South Dakota, no cause of action for tortious interference with contract may be maintained against a corporate officer who, acting within the scope of his or her authority, discharges an employee." 1999 SD 22, ¶12, 589 NW2d 917, 919

(continued . . .)

#24579

[¶10.] In the employment context, we think a claim of tortious interference with contractual relations may be made against a corporate officer, director, supervisor, or co-worker, who acts wholly outside the scope of employment, and who acts through improper means or for an improper purpose. Such individuals should not stand immune from their independently improper acts committed entirely for personal ends. There are two reasons, however, why judicial vigilance is called for here. First, the tort should not be tolerated as a device to bypass South Dakota's at-will employment law. "An employment having no specified term may be terminated at the will of either party on notice to the other, unless otherwise provided by statute." SDCL 60-4-4. If we fail to hold the line on these types of tort actions, we put at stake converting at-will employment law into a rule requiring just cause for every employee termination. *See* Clement v. Rev-Lyn Contracting Co., 663 NE2d 1235, 1236 n6 (MassCtApp 1996). In this case, Gruhlke concedes in her complaint that her employment was based on a "one year employment-at-will agreement."

[¶11.] Second, use of the tort without adequate controls could chill the advantages of corporate formation. As the Minnesota Supreme Court wrote:

> If a corporation's officer or agent acting pursuant to his company duties terminates or causes to be terminated an employee, the actions are those of the corporation; the employee's dispute is with the company employer for breach of contract, not the agent individually for a tort. To allow the officer or agent to be sued and to be personally liable would chill corporate personnel from performing their duties and would be contrary to the limited liability accorded incorporation.

_____

(. . . continued)
(quoting *Nelson*, 507 NW2d at 700). In *Case*, we concluded that the defendants were acting within the scope of their authority. *Id.* ¶¶13-14.

-5-

Nordling v. N. States Power Co., 478 NW2d 498, 505-06 (Minn 1991). Indeed, a rule allowing suits against corporate officers who act within the scope of their authority would be a "dangerous doctrine." *Nelson*, 507 NW2d at 700 (citation omitted). Moreover, the distinction between contract and tort would be blurred by the untrammeled imposition of tort liability on contracting parties.

[¶12.] Because this tort could eclipse wrongful termination actions by the maneuver of simply pleading around at-will employment law, many courts place a heavy burden on plaintiffs.[3] We believe the Restatement formulation adequately protects the interests involved when its conditions are strictly complied with.[4]

---

3. Some jurisdictions require "malice," "legal malice," or "actual malice" as a predicate to a tortious interference claim against an officer or agent of the principal company. *See* Hickman v. Winston County Hosp. Bd., 508 So2d 237, 238-39 (Ala 1987) (actual malice required); Sorrells v. Garfinckel's, Brooks Bros., Miller & Rhoads, Inc., 565 A2d 285, 290-91 (DC 1989) (supervisor must act with malice); Swager v. Couri, 395 NE2d 921, 927-28 (Ill 1979) (without justification or maliciously); Burcham v. Unison Bancorp, Inc., 77 P3d 130, 151-52 (Kan 2003) (malice and lack of justification); Blackstone v. Cashman, 860 NE2d 7, 12-13 (Mass 2007) ("actual malice" establishes the "improper motive and means"); Wagner-Smith Co. v. Ruscilli Constr. Co., Inc, 861 NE2d 612, 620-21 (OhioComPl 2006) (proof of malice required); *Nordling*, 478 NW2d at 506-07 (actual malice); *see also* Soltani v. Smith, 812 FSupp 1280, 1297 (DNH 1993) (actual malice and "deliberate intention to harm plaintiff"); Forrester v. Stockstill, 869 SW2d 328, 335 (Tenn 1994) (requiring proof of "per se wrongful acts" or malicious acts); Testerman v. Tragesser, 789 SW2d 553, 556-57 (TennCtApp 1989) (malice or ill will must be shown).

4. Restatement (Second) of Torts § 766, *Intentional Interference with Performance of Contract by Third Person* (1979):

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Thus, to state a claim against a corporate officer for intentional interference with corporate contractual relations with another, a plaintiff must allege and prove each of the following elements: (1) the existence of a valid contractual relationship, (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for an improper purpose, (5) a causal effect between the interference and damage to the relationship, and (6) damages. *See Tibke*, 479 NW2d at 908 (following Restatement (Second) of Torts §§ 766, 766B).[5] *See also* McGanty v. Staudenraus, 901 P2d 841, 844 (Or 1995) (reciting these factors in following section 766 of the Restatement). We next examine two elements more closely: third party and improper means or purpose.

## III.

### Third Party – Conduct Outside Scope of Employment

[¶13.] A third party is an indispensable element in the tort of intentional interference with contractual relations. With interference suits against corporate officers, determination of such element precedes any further analysis. "Without the protection of the third party element of the tort, virtually every supervisory decision affecting employment status would be subject to judicial challenge through the Trojan horse of the intentional interference tort."[6] In what circumstances, then,

---

5. In the employment context, to more closely follow the Restatement (Second) of Torts § 766, these factors are stated in a slightly different manner than as recited in *Tibke,* 479 NW2d at 908.

6. John Alan Doran, *It Takes Three to Tango: Arizona's Intentional Interference with Contract Tort and Individual Supervisor Liability in the Employment Setting*, 35 ArizStLJ 477, 508 (Summer 2003).

will a corporate officer's actions be considered the actions of a third party? In keeping with the principle of respondeat superior, when employees act within the scope of their employment, their acts are the acts of their company. State v. Hy Vee Food Stores, Inc., 533 NW2d 147, 149 (SD 1995). A corporate entity cannot contractually interfere with itself. "[W]hen an employee is acting within the scope of the employee's employment, and the employer, as a result, breaches a contract with another party, that employee is not a third party for the tort of intentional interference with economic relations." *McGanty*, 901 P2d at 846.

[¶14.] Accordingly, when claiming tortious interference with a contractual relationship, the plaintiff must plead and prove that the officer acted outside the scope of employment.[7] *See Mueller*, 2002 SD 38, ¶38, 643 NW2d at 68-69 (quoting *Landstrom*, 1997 SD 25, ¶75, 561 NW2d at 16). "Generally, if an act is connected either directly or indirectly with the business of the employer (designed to benefit the employer's business), that act is conducted within the scope of employment." Deuchar v. Foland Ranch, Inc., 410 NW2d 177, 180 (SD 1987) (citation omitted).

> Further, "[t]he fact that the servant's act is expressly forbidden by the master, or is done in a manner which he has prohibited, is to be considered in determining what the servant has been hired to do, but it is usually not conclusive, and does not in itself

---

7. Gruhlke contends that Bednar acted outside the scope of employment when he asked her to commit fraudulent and misleading acts. This assertion, however, does not establish how Bednar acted outside the scope of employment when he allegedly interfered with her business relationship with CU Mortgage. That Bednar may have engaged in fraudulent conduct when he originated mortgages is immaterial to the third party element. "Whether a party has acted by either an improper means or with an improper purpose is relevant . . . *only* if that party first meets the threshold test of being a third party to the contractual relationship with which the interference allegedly has occurred." *McGanty*, 901 P2d at 847 (emphasis in original).

> prevent the act from being within the scope of employment." An essential focus of inquiry remains: Were the servant's acts in furtherance of his employment?

*Id*. at 180-81 (internal citations omitted) (emphasis omitted).[8] "Considerations of time, place, and circumstance assist [the] evaluation." South Dakota Public Entity Pool for Liability v. Winger, 1997 SD 77, ¶9, 566 NW2d 125, 128. The following considerations are relevant: (1) did the officer's acts occur substantially within the time and space limits authorized by the employment; (2) were the actions motivated, at least in part, by a purpose to serve the employer; and (3) were the actions of a kind that the officer was hired to perform. *See id*.; *see also McGanty*, 901 P2d at 846 n3. If the officer's actions were at least in part motivated by a purpose to serve the employer, then those actions cannot be the acts of a third party.[9] Indeed, under the Restatement (Second) of Agency § 236 cmt b (1958), "[t]he fact that the predominant motive of the [officer] is to benefit himself . . . does not prevent the act from being within the scope of employment." An officer's actions

---

8. In most cases, whether an act was within the scope of employment is a question of fact. *Deuchar*, 410 NW2d at 181.

9. Several courts couch the outside of the scope of employment requirement as actions done *solely* for the officer's personal benefit and not in any fashion for the benefit of the company. *See* W.O. Brisben Co., Inc. v. Krystkowiak, 66 P3d 133, 137 (ColoCtApp 2002); Murray v. Bridgeport Hosp., 480 A2d 610, 613 (ConnSuperCt 1984); Reed v. Michigan Metro Girl Scout Council, 506 NW2d 231, 233 (MichCtApp 1993) (the actions must be "strictly personal"); *Wagner-Smith Co.*, 861 NE2d at 621; Boers v. Payline Sys., Inc., 918 P2d 432, 435 (OrCtApp 1996); *see also* Olick v. Kearney, 451 FSupp2d 665, 666-67 (EDPa 2006); Trimble v. City and County of Denver, 697 P2d 716, 726 (Colo 1985), *superseded by statute as stated in* Colorado Dept. of Transp. v. Brown Group Retail, Inc., 182 P3d 687 (Colo 2008).

are outside the scope of employment only if they are "done with no intention to perform [them] as a[n] . . . incident to a service. . . ." *Id.* at § 235.

[¶15.]      In sum, when corporate officers act within the scope of employment, even if those actions are only partially motivated to serve their employer's interests, the officers are not third parties to a contract between the corporate employer and another in compliance with the requirements for the tort of intentional interference with contractual relations.

## IV.

### "Improper" Means or Purpose

[¶16.]      After it is established that an intentional interference was committed by a third party, then it must be determined whether the interference was improper.[10]  The following elements from the Restatement (Second) of Torts § 767 should be considered in assessing whether a defendant's interference with a contractual relation was improper:  (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the societal interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.[11]  St. Onge Livestock Co.,

---

10.    *Long, supra* n1, at 510.

11.    A number of jurisdictions use this list of seven factors in Restatement (Second) of Torts § 767.  *See* Wagenseller v. Scottsdale Mem'l Hosp., 710 P2d 1025, 1042-43 (Ariz 1985), *superseded on other grounds by* ArizRevStat § 23-1501 (1996); *Sorrells*, 565 A2d at 290-91; Toney v. Casey's General Stores,
(continued . . .)

Ltd. v. Curtis, 2002 SD 102, ¶16, 650 NW2d 537, 542 (quoting Restatement (Second) of Torts § 767 (1979)). In *St. Onge*, we used the term "unjustified," but we now adhere to the Restatement's term "improper."[12] As with proof of the existence of a third party, the burden is on the plaintiff to plead and prove that the interference was improper. Windsor Sec., Inc. v. Hartford Life Ins. Co., 986 F2d 655, 663 (3dCir 1993); *Wagenseller*, 710 P2d at 1043. What constitutes improper interference will depend on the particular facts of each case with consideration of the elements above.[13]

## V.

[¶17.] We now turn to Gruhlke's complaint to determine whether she has sufficiently pleaded her claim against Bednar for intentional interference with her employment contract. A motion to dismiss tests the legal sufficiency of the pleadings, and therefore, we review the circuit court's decision on the motion de novo. Elkjer v. City of Rapid City, 2005 SD 45, ¶6, 695 NW2d 235, 238. "While a

_____

(. . . continued)
Inc., 460 NW2d 849, 853 (Iowa 1990); *Nordling*, 478 NW2d at 505-06; Huff v. Swartz, 606 NW2d 461, 468 (Neb 2000); *Wagner-Smith Co.*, 861 NE2d at 618; Trepanier v. Getting Organized, Inc., 583 A2d 583, 589-90 (Vt 1990).

12. The term "unjustified" would be particularly inapposite in an at-will employment interference claim, since no justification is required to terminate at-will employees.

13. At least one court has held that the "motivation of personal gain, including financial gain . . . generally is not enough to satisfy the improper interference requirement." King v. Driscoll, 638 NE2d 488, 495 (Mass 1994) (citation omitted). *See also W.O. Brisben Co., Inc.*, 66 P3d at 137 (must allege officer "acted outside the scope of his agency and solely with the intent to harm one of the contracting parties or to interfere in the contract").

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . ." Sisney v. Best, 2008 SD 70, ¶7, __ NW2d __ (citing Bell Atlantic Corp. v. Twombly, __ US __, 127 SCt 1955, 1964-65, 167 LEd2d 929 (2007) (internal citations omitted)). The rules "'contemplate[ ] [a] statement of circumstances, occurrences, and events in support of the claim presented. . . .'" *Id.* ¶7 (quoting *Bell Atlantic*, ___ US at ___, 127 SCt at 1965 n3, 167 LEd2d 929 (quoting 5 Wright & Miller Fed Prac & Pro: Civ3d § 1202 at 94, 95)). Ultimately, the complaint must allege facts, which, when taken as true, raise more than a speculative right to relief. *Bell Atlantic*, ___ US at ___, 127 SCt at 1965, 167 LEd2d 929; *see also* Erickson v. Pardus, ___ US ___, 127 SCt 2197, 2200, 167 LEd2d 1081 (2007). Despite our adoption of the new rule in *Best*, South Dakota still adheres to the rules of notice pleading, and therefore, a complaint need only contain "[a] short and plain statement of the claim showing that the pleader is entitled to relief[.]" SDCL 15-6-8(a)(1).[14]

---

14. As we noted in *Sisney*, in *Bell Atlantic*, the United States Supreme Court rejected the language previously used by the Court in *Conley v. Gibson,* which stated that "[i]n appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Sisney,* 2008 SD 70, ¶7, __ NW2d at ___ (quoting Schlosser v. Norwest Bank S.D., 506 NW2d 416, 418 (SD 1993) (quoting Conley v. Gibson, 355 US 41, 45-46, 78 SCt 99, 102, 2 LEd2d 80 (1957))); *Bell Atlantic*, ___ US at ___, 127 SCt at 1968-69, 167 LEd2d 929 (holding that the *Conley* "no set of facts" language "has earned its retirement" and "is best forgotten"). Accordingly, cases like

(continued . . .)

[¶18.]      Gruhlke did not specifically assert that Bednar acted improperly, one of the required elements of proof, but she alleged that Bednar "acted intentionally and was unjustified in his actions in advocating the termination of Gruhlke's business relationship with CU Mortgage." She also gave a detailed recitation of the facts she believed supported her assertions. She alleged that Bednar "did not want Gruhlke at CU Mortgage because she would not sign off on fraudulent and misleading mortgages that Bednar originated. . . [and] because Gruhlke would not sign off on the fraudulent mortgages, Bednar lost commissions and/or had to sign off on the fraudulent mortgages himself." These allegations go further than mere conclusory assertions. The term "unjustified" was presumably taken from our previous cases; it is only in this opinion that we adopt the "improper" terminology from the Restatement. On review, we test only the legal sufficiency of the pleading and "accept the material allegations as true and construe them in a light most favorable to the pleader" to "determine whether the allegations allow relief. . . ." Fenske Media Corp. v. Banta Corp., 2004 SD 23, ¶7, 676 NW2d 390, 392-93 (citation omitted). *See also Erickson*, ___US at ___, 127 SCt at 2200, 167 LEd2d 1081; *Bell Atlantic,* ___ US at ___, 127 SCt at 1964-65, 167 LEd2d 929. These assertions, as far as they go, are sufficient to form part of the elements required for the tortious interference action.

_____

(. . . continued)
      *Schlosser v. Norwest Bank S.D.*, 506 NW2d 416 (SD 1993), and others, to the
      extent they relied on this language, are overruled.

[¶19.] On the other hand, with respect to the third-party element, nowhere in her complaint does Gruhlke allege that Bednar acted as a third party or that he acted beyond the scope of his employment. Gruhlke contends it is sufficient that she alleged that Bednar "acted out of his personal interests when he advocated for the termination of [her] business relationship with CU Mortgage." Yet, as we have said, corporate officers cannot be considered third parties to contracts between the corporate employer and another if the actions of the officers were even partially motivated to serve employer interests. Gruhlke did not allege that Bednar acted "solely" for his personal benefit when he advocated for her dismissal. In oral argument and in the appellate briefs, counsel for Gruhlke contended that acting "solely" for personal interest was not a necessary element of proof.[15] On the contrary, in suits against corporate officers for tortious interference with the corporation's contract with another, pleading this allegation is indispensible.

[¶20.] To establish that a corporate officer interfered as a third party in the company's contract with another, the plaintiff must plead and prove that the officer "acted solely 'in furtherance of [his or her] personal interests so as to preserve the logically necessary rule that a party cannot tortiously interfere with its own contract.'" Latch v. Gratty, Inc., 107 SW3d 543, 545 (Tex 2003) (quoting Holloway v. Skinner, 898 SW2d 793, 796 (Tex 1995)). "It is now settled law that corporate agents are not liable for tortious interference with the corporation's contracts unless

---

15. Gruhlke cited the elements from South Dakota Pattern Jury Instruction No. 170-41-1. *See also Case,* 1999 SD 22, ¶12, 589 NW2d at 919. Those elements are for the generic claim for tortious interference. Here, a claim against a

(continued . . .)

they acted solely for their own benefit with no benefit to the corporation." Reed v. Michigan Metro Girl Scout Council, 506 NW2d 231, 233 (MichCtApp 1993) (citation omitted).

[¶21.]     Because we regard this type of action with high vigilance, we require strict adherence to the pleading requirements. We will not speculate that Gruhlke might have undisclosed elements or facts to support recovery. *See Sisney*, 2008 SD 70, ¶7 n1, __ NW2d __ (citing *Bell Atlantic,* ___ US at ___, 127 SCt at 1968, 167 LEd2d 929 (citations omitted)). Failure to properly plead each element is fatal. Similarly, the complaint in *Kahala Royal Corp. v. Goodsill Anderson Quinn & Stifel* failed to state a claim for tortious interference because it did not allege that the officers acted outside the scope of employment and "acted solely for their own benefit with no benefit to" the corporation. 151 P3d 732, 756 (Hawaii 2007) (citation omitted). Although Gruhlke's complaint does set forth detailed facts, it fails to contain a recitation of the required elements for a cause of action against a corporate officer for tortious interference. Thus, it fails to state a claim upon which relief can be granted.

[¶22.]     Affirmed.

[¶23.]     GILBERTSON, Chief Justice, and ZINTER, and MEIERHENRY, Justices, concur.

[¶24.]     SABERS, Justice, deeming himself disqualified did not participate.

_____

(. . . continued)
        corporate officer for interference with a corporate employment contract with
        another requires more specific elements.

[¶25.]	AMUNDSON, Retired Justice, participated in the oral argument of this case, but subsequently accepted employment as the Sioux Falls City Attorney; therefore, he has become disqualified.