#27383-a-GAS
**2015 S.D. 79**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

AGGREGATE CONSTRUCTION, INC.,        Plaintiff and Appellant,

    v.

AARON SWAN & ASSOCIATES, INC.,        Defendant and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE KATHLEEN F. TRANDAHL
Judge

* * * *

RONALD G. SCHMIDT
JASON M. SMILEY of
Gunderson, Palmer, Nelson
  & Ashmore, LLP
Rapid City, South Dakota        Attorneys for plaintiff and
                                 appellant.

MICHAEL F. TOBIN
MEGHANN M. JOYCE of
Boyce Law Firm, LLP
Sioux Falls, South Dakota        Attorneys for defendant and
                                 appellee.

* * * *

CONSIDERED ON BRIEFS
ON AUGUST 31, 2015
OPINION FILED **10/28/15**

#27383

SEVERSON, Justice

[¶1.]        Aggregate Construction, Inc. (Aggregate) brought a breach of contract and negligence action against Aaron Swan & Associates, Inc. (Swan) based on Swan's alleged failure to adequately test the sodium-sulfate soundness of material to be used in a construction project for the South Dakota Department of Transportation (SDDOT).  The circuit court dismissed the action on summary judgment, finding that a release executed between Aggregate and SDDOT barred the actions against Swan.  Aggregate appeals.  We affirm.

## Background

[¶2.]        On December 31, 2007, Aggregate delivered samples of Type 2A aggregate to Swan for sodium-sulfate soundness testing.[1]  Aggregate planned to quote prices for the material to prime contractors that intended to bid on a SDDOT project requiring the material.  Before quoting prices, Aggregate engaged Swan to test material from the Ophiem pit in Perkins County, South Dakota, to determine whether it met SDDOT specifications, which required a maximum soundness loss of 15.  In January 2008, Swan informed Aggregate that preliminary testing indicated that the material from the Ophiem pit met SDDOT specifications and that the soundness result would be further lowered after the unprocessed pit-run material was processed.  Aggregate subsequently quoted a price for the material to prime contractors, one of which, Bituminous Paving, Inc., was awarded the contract for

---

1.        *See Bowes Constr., Inc. v. S.D. Dep't of Transp.*, 2010 S.D. 99, ¶¶ 3-4, 793 N.W.2d 36, 38-39 for a discussion of the sodium-sulfate soundness testing procedure and purpose.

the project. Thereafter Bituminous and Aggregate entered into a subcontract for the supply of the material.

[¶3.]     In August 2008, SDDOT sampled and tested the material from the Ophiem Pit. SDDOT advised Aggregate that the sample failed sodium-sulfate soundness testing with a score of 19. Aggregate contacted Swan to inform it that the material had failed SDDOT testing. Swan informed Aggregate that there had been an error in Swan's calculation and that the correct result should have been 21.3.

[¶4.]     SDDOT determined that the Ophiem Pit aggregate would need to be blended with other material to ensure compliance with specifications. In September 2008, Aggregate started blending "Fisher Chips" with the Ophiem Pit aggregate and stockpiled the blend at three locations: Ophiem, Shade Hill, and Bison. SDDOT took samples from the three stockpiles, consolidating the samples for purposes of sodium-sulfate soundness testing. SDDOT notified Aggregate in October that the material still failed testing with a score of 16. In December, SDDOT informed Aggregate that the material could not be used absent corrective action.

[¶5.]     In February 2009, Aggregate challenged the composite sample of aggregates from the stockpiles. It requested split sampling and submission to an independent laboratory for testing. It also gave notice of a potential claim due to alleged improper sampling and testing. SDDOT refused to resample or retest the stockpiles. After further dispute of SDDOT testing procedures, in March 2009, SDDOT admitted that its sampling techniques had not been followed and it would

therefore obtain new samples and test each stockpile separately. Finally, in April 2009, SDDOT informed Aggregate that all three samples passed soundness testing.

[¶6.] These problems with the blend resulted in multiple delays in Aggregate's ability to provide the material to Bituminous. As a result, Bituminous obtained Type 2A cover aggregate from a different pit to use on a segment of the project. Bituminous alleged that Aggregate had breached its contract. Thereafter, it charged increased costs to Aggregate and withheld payment. Aggregate filed a claim with SDDOT for damages in the amount of $453,006.47; SDDOT denied the claim. Aggregate then initiated a lawsuit against SDDOT. Aggregate and SDDOT settled the lawsuit and executed a "Full and Final Release of All Claims."

[¶7.] After settling the lawsuit against SDDOT, Aggregate filed this action against Swan, alleging breach of contract and negligence. Swan moved for summary judgment and argued that the release between Aggregate and SDDOT barred the claims against it. The circuit court agreed. It granted summary judgment and dismissed the claims against Swan. Aggregate appeals, and we restate its issues as follows: whether the circuit court erred in determining that the release applies to the contract and negligence claims against Swan.

### Standard of Review

[¶8.] "We will affirm the [circuit] court's grant or denial of a motion for summary judgment when no genuine issues of material fact exist, and the legal questions have been correctly decided." *Arch v. Mid-Dakota Rural Water Sys.*, 2008 S.D. 122, ¶ 7, 759 N.W.2d 280, 282 (quoting *A-G-E Corp. v. State*, 2006 S.D. 66, ¶ 13, 719 N.W.2d 780, 785). "The interpretation of a contract is a question of law,

which is reviewed de novo." *Id.* (quoting *A-G-E Corp.*, 2006 S.D. 66, ¶ 15, 719 N.W.2d at 786).

## Analysis

[¶9.] Aggregate contends that the circuit court erred because Swan's alleged negligence or breach of contract[2] occurred in January 2008 rather than "during construction season 2008-2009" as required by the release. Therefore, according to Aggregate, neither its contract nor negligence claim against Swan should have been dismissed because the release does not apply.

[¶10.] The release executed between SDDOT and Aggregate provides in relevant part:

> In sole consideration of the payment of One Hundred Seventy-Two Thousand Five Hundred Dollars ($172,500.00) to the undersigned [(Aggregate)] made by or on behalf of the South Dakota Department of Transportation and the agents and employees of SDDOT, hereinafter called Releasee, the receipt and sufficiency of which is hereby acknowledged, the undersigned for itself, its heirs, personal representatives and assigns, releases and forever discharges the aforesaid Releasee, and all others directly or indirectly liable, from any and all claims, demands, liabilities, obligations, damages, costs, expenses, loss of profits, loss of use, loss of services and consortium, actions and causes of action, including each and every right of payment for damages said undersigned may now or hereafter have, arising from any act, occurrence or omission up to the present time and particularly on account of all loss and damage of any kind heretofore sustained, presently existing, or that may hereafter be sustained or that may arise in consequence of incidents that occurred during construction season 2008-2009 on: (1) the Butte County Project, which is the subject matter of Butte County lawsuit 10-298; and (2) the Ziebach County Project, which is the subject matter of Ziebach County lawsuit 10-15.

---

2. We offer no opinion whether the allegations set forth in the complaint constitute a tort claim, contract claim, or both.

There are hereby discharged and released not only the Releasee specifically named herein as discharged and released, but also in like manner and to the same extent all other persons, corporations and partnerships whatsoever such as are classified as joint tortfeasors, it being intended hereby to completely bar any right of action against any of such joint tortfeasors whether or not named herein, and vest in the person or persons, corporation or corporations, partnerships or limited partnerships, specifically named herein as released and discharged, all rights as to contribution from any such joint tortfeasor not specifically named herein.

[¶11.] Aggregate contends that Swan's negligence or breach of contract is not an "incident[ ] that occurred during construction season 2008-2009." Swan asserts that the release applies because its work was performed for a project to be completed in the 2008-2009 construction season. The circuit court determined that the release "bars any cause of action related to harms or injuries from the 2008-2009 Project." We reject each of these three interpretations of the contract's language.

[¶12.] The release applies more broadly than to only those claims arising out of the 2008-2009 construction season. The release bars all "causes of action . . . arising from any act, occurrence or omission up to the present time[.]" According to its language, the release bars any claim that Aggregate has against SDDOT from any "act, occurrence or omission" by SDDOT "and all others directly or indirectly liable" that had occurred up to the date the release was executed. The phrase "incidents that occurred during construction season 2008-2009" is part of the broader phrase: "and particularly on account of all loss and damage of any kind heretofore sustained, presently existing, or that may hereafter be sustained or that

may arise in consequence of incidents on: (1) the Butte County Project . . . and (2) the Ziebach County Project[.]" Therefore, "arise in consequence of incidents that occurred during construction season 2008-2009" modifies the immediately preceding phrase "and particularly on account of all loss and damage" rather than "any and all claims, demands, liabilities, obligations, damages, costs, expenses, loss of profits, loss of use, loss of services and consortium, actions and causes of action, including each and every right of payment for damages said undersigned may now or hereafter have, arising from any act, occurrence or omission up to the present time[.]" To read the release otherwise would render the phrase "arising from *any* act, occurrence or omission up to the present time" meaningless. (Emphasis added.) *See Nelson v. Schellpfeffer*, 2003 S.D. 7, ¶ 14, 656 N.W.2d 740, 744 ("An interpretation which gives a reasonable and effective meaning to all the terms is preferred to an interpretation [that] leaves a part unreasonable or of no effect.").

[¶13.] Contrary to Aggregate's interpretation, this last phrase in the first paragraph of the release is not a limitation on the release's applicability. Rather, the words "and particularly" indicate that the words that follow are those of emphasis. Therefore, the release applies to the Butte and Ziebach County Projects in addition to any other claims against SDDOT and "all others directly or indirectly liable" up to that time. Because of the broad language of the release, Swan's actions need only to have occurred by the time the release was executed rather than during the construction season of 2008-2009. The parties do not dispute that Swan's soundness testing occurred in December 2007 or January 2008, which is clearly prior to the settlement reached with SDDOT and thus covered by the release.

[¶14.]     According to Aggregate, the circuit court's grant of summary judgment only applied to its negligence claims. Further, Aggregate asserts that the release does not bar a contract claim and that it could not do so as a matter of law. Summary judgment was granted on the entire case, which included the contract claims against Swan. The court's order denying Aggregate's motion to reconsider and its order "denying [Aggregate's] motion for trial of breach of contract claims" clarify that the memorandum decision applied to the contract claims. The court explicitly states in its order denying the motion for trial on the contract claims that "the summary judgment decision issued by the [c]ourt on January 10, 2015, included the breach of contract claim." Aggregate has not provided any authority for the proposition that "the release could not have released the contract claim as a matter of law." The release's language barring "any and all claims . . . and causes of action" is sufficiently broad to release contract claims that Aggregate may have had against "all others directly or indirectly liable[.]" Lastly, the second paragraph of the release does not restrict the release's applicability to joint tortfeasors. Rather, it expands applicability to joint tortfeasors. Therefore, we affirm the circuit court's grant of summary judgment.[3]

[¶15.]     Because Aggregate and SDDOT executed a release that applied to the causes of action brought by Aggregate against Swan, we need not reach the other issues raised by Aggregate.

---

3.     Although the circuit court determined the release applied based on a different interpretation of the release's language, "a [circuit] court may still be upheld if it reached the right result for the wrong reason." *Schmiedt v. Loewen*, 2010

(continued . . .)

#27383

[¶16.]       GILBERTSON, Chief Justice, and ZINTER, WILBUR, and KERN,

Justices, concur.

---

(. . . continued)
      S.D. 76, ¶ 20 n.3, 789 N.W.2d 312, 318 n.3 (quoting *Flugge v. Flugge*, 2004
      S.D. 76, ¶ 35, 681 N.W.2d 837, 846).