#27438, #27446-a-SLZ
**2016 S.D. 9**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

DAWN GORES, individually and
as conservator of HALEY GORES,
and HALEY GORES individually,                    Plaintiffs and Appellants,

  v.

LISA A. MILLER, M.D., and YANKTON
SURGICAL ASSOCIATES, P.C.,                       Defendants and Appellees.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
YANKTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHERYLE W. GERING
Judge

* * * *

TIMOTHY L. JAMES of
James & Larson Law
Yankton, South Dakota

  and

DAN RASMUS of
Hovland & Rasmus, PLLC
Edina, Minnesota                                 Attorneys for plaintiffs
                                                 and appellants.


MELISSA C. HINTON of
Evans Haigh & Hinton LLP
Sioux Falls, South Dakota                        Attorneys for defendants
                                                 and appellees.

* * * *

CONSIDERED ON BRIEFS
ON NOVEMBER 30, 2015

OPINION FILED **02/03/16**

ZINTER, Justice

[¶1.]      A minor child sustained physical injuries in an auto accident.  The minor and her parent–conservator signed a general release in exchange for a settlement with the driver, insured, and insurer of the auto.  The release did not specifically name the treating physician or clinic, but it released all other claims that might develop from the accident.  The minor and her parent subsequently filed a malpractice suit against the clinic and the physician who treated the injuries the minor sustained in the accident.  The circuit court ruled that the release discharged the malpractice claims, and the court granted summary judgment in favor of the medical providers.  The parent and minor appeal.  We affirm.

*Facts and Procedural History*

[¶2.]      On July 28, 2010, fifteen-year-old Haley Gores was a passenger in a van driven by Steven Smith.  Smith lost control of the van, and Haley suffered lacerations to her right arm.  Dr. Lisa Miller debrided Haley's wounds at the hospital.  The next day, Dr. Miller performed an excisional debridement and closed the lacerations.  On August 13, Dr. Miller performed a second excisional debridement.  Haley continued to see Dr. Miller for her care until October 21, 2010, when Dr. Miller determined that Haley's arm had completely healed.  Haley's last contact with Dr. Miller was in December 2010.

[¶3.]      In March 2011, a court appointed Haley's mother, Dawn Gores, as Haley's conservator for the purpose of prosecuting and settling claims arising from the accident.  In April 2011, Dawn asked the conservator court to approve a settlement with Smith's insurer for the policy limit of $25,000 in exchange for Dawn

and Haley's general release.[1] The conservator court approved the settlement, and Dawn and Haley (Appellants) executed the release.[2]

[¶4.]    In April 2013, Haley and Dawn (in her individual capacity and as Haley's conservator) sued Dr. Miller and Yankton Surgical Associates (YSA), Dr. Miller's practice group. Appellants claimed that Haley received substandard medical care for the arm injury Haley suffered in the auto accident. More specifically, they alleged that Haley would have healed faster and required less treatment if Dr. Miller had done a skin graft and properly instructed Haley on how to dress her wounds.

[¶5.]    Dr. Miller and YSA moved for summary judgment, contending that the release discharged Appellants' claims against them. Appellants moved for additional time to conduct discovery to ascertain the intent of the parties to the release, including the intent of the judge who approved the settlement. The discovery motion was denied. The court determined that Appellants signed a general release that was unambiguous. The court further determined that because the release was unambiguous, the release expressed the intent of the parties. Based on the language of the release, the court concluded that the malpractice claims were discharged as a matter of contract, and the court granted summary judgment in favor of Dr. Miller and YSA.

---

1.    Steven Smith was insured under his mother's policy.

2.    The court also approved a settlement with Appellants' insurance company for its $100,000-underinsured-motorist limit, less the liability limit paid by Smith's carrier.

[¶6.] Appellants raise four issues on appeal: (1) whether the release was intended to discharge Appellants' claims against Dr. Miller and YSA; (2) whether Dr. Miller and YSA were "independent tortfeasors," who were beyond the scope of the release; (3) whether the circuit court should have allowed additional time for discovery to ascertain the intent of the parties; and (4) whether res judicata barred the release defense.

*Decision*

[¶7.] In their first issue, Appellants argue that the release was not intended to discharge the claims against Dr. Miller and YSA. Appellants point out that the release did not mention Dr. Miller and YSA and that Appellants were not fully compensated through the settlement. In their second issue, Appellants argue that the release did not apply to the medical providers because they were "independent tortfeasors" who caused injuries in addition to those caused by Smith. Because the scope of the release often controls the questions raised in these issues, the first two issues are discussed together.

[¶8.] A release is a contract, and if a contract is unambiguous, we rely on the language of the contract to ascertain and give effect to the parties' intent. *Fenske Media Corp. v. Banta Corp.*, 2004 S.D. 23, ¶ 8, 676 N.W.2d 390, 393. If the language is unambiguous, neither the releasor's subjective intent nor the failure to obtain full satisfaction in the settlement governs: the terms of the release control. *Flynn v. Lockhart*, 526 N.W.2d 743, 746 (S.D. 1995); *see also Aggregate Constr., Inc. v. Aaron Swan & Assocs., Inc.*, 2015 S.D. 79, ¶ 13, 871 N.W.2d 508, 512 (concluding that broad language of a release controlled even though the defendants were

different entities subject to different claims). Contract interpretation is a legal question we review de novo. *Tri-City Assocs., L.P. v. Belmont, Inc.*, 2014 S.D. 23, ¶ 9, 845 N.W.2d 911, 915.

[¶9.]        The release in this case provided in relevant part:

> [T]he undersigned hereby releases, and forever discharges Lori Smith and her heirs, executors, administrators, agents, insurers, and assigns *and all other persons, firms or corporations liable or who might be claimed to be liable*, none of whom admit any liability to the undersigned but all expressly deny any liability, *from any and all claims, demands, damages, actions, causes of action or suits of any kind or nature whatsoever*, and particularly on account of *all injuries*, known and unknown, both to person and property, *which have resulted or may in the future develop from an incident which occurred on or about the 28th Day of July, 2010*, at or near Springfield, South Dakota . . . .
>
> The undersigned hereby represents that the terms of this settlement have been completely read and are fully understood and voluntarily accepted for the *purpose of making a full and final compromise adjustment and settlement of any and all claims*, disputed or otherwise, *on account of the injuries* and damages above mentioned, and *for the express purpose of precluding forever any further or additional claims arising out of the aforesaid accident* . . . .

(Emphasis added.)

[¶10.]        This language is broad and unambiguous. Under it, Appellants released all "additional claims" of "any kind or nature whatsoever" against "all other persons" for "all injuries" that had or might "result from," "develop" from, or "arise out of" the accident. Applying this language, we note that Dr. Miller treated Haley for the injuries she sustained in the accident, and the damages Appellants seek from this malpractice claim are for a suboptimal recovery from those same injuries. Because the alleged malpractice damages developed from the injuries Haley sustained in the accident, the language of the release covers the malpractice

claim. We have previously held that this type of broad language in general releases discharges additional claims against third parties not named. *See Aggregate Constr. Inc.*, 2015 S.D. 79, ¶ 13, 871 N.W.2d at 512; *Flynn*, 526 N.W.2d at 746.[3]

[¶11.] Appellants, however, contend that the release does not apply because the medical providers were "independent tortfeasors" who caused injuries separate and distinct from those inflicted by the auto accident. This contention fails to acknowledge that in actions for malpractice involving treatment of an injury caused by a prior wrongdoer, the act of the prior wrongdoer is a legal cause of the damages flowing from subsequent, negligent medical treatment. *See* Restatement (Second) of Torts § 457 (Am. Law Inst. 1965)[4]; W. Page Keeton et al., *Prosser & Keeton on the*

---

3.     Appellants argue that *Flynn* is inapplicable because they contend that unlike *Flynn*, the release in this case does not specifically exonerate Dr. Miller and YSA. *See Flynn*, 526 N.W.2d at 746. Appellants also point out that the release in this case did not provide for the discharge of joint tortfeasors. *Id.* We agree that *Flynn* involved the specific exoneration of another "joint tortfeasor." We stated that if a release specifically provides for a release of other unnamed joint tortfeasors, the unnamed joint tortfeasor is released. *Id.* We reasoned that the release in that case specifically applied to joint tortfeasors, the defendant was an unnamed joint tortfeasor, and therefore the contractual language of the release provided for the discharge of the unnamed tortfeasor. *Id.*; SDCL 15-8-17. Our reasoning was based on the language of the contract that included the release of other identifiable claims. That reasoning is applicable in the threshold question involving the scope of Appellants' release whether the case involves joint tortfeasors or any other identifiable claims.

4.     A Restatement illustration demonstrates the rule:

> A's negligence causes B serious harm. B is taken to a hospital. The surgeon improperly diagnoses his case and performs an unnecessary operation, or, after proper diagnosis, performs a necessary operation carelessly. A's negligence is a legal cause of the additional harm which B sustains.

Restatement (Second) of Torts § 457 illus. 1.

*Law of Torts* § 47, at 309 (5th ed. 1984). Therefore, even if Dr. Miller and YSA are "independent tortfeasors" who caused distinct injuries—a question we do not decide in this case—the law regards all of these injuries as causally related to the accident *See* Restatement (Second) of Torts § 457 cmt. a.[5] Because Smith is responsible for both injuries as a matter of law,[6] Appellants have no argument that their claim against Dr. Miller and YSA is not causally related to the auto accident. This result is contemplated in such releases. As we have previously noted, "the defendant who originally procures the release gains nothing if the plaintiff can [still] sue other joint or concurrent tortfeasors. In such a case, the original defendant is left open to claims for contribution and/or indemnity and may wind up having to litigate the case anyway." *Flynn*, 526 N.W.2d at 746. And that is what would happen in this

---

5.     The comment provides:

> The situation to which the rule stated in this Section is usually applicable is where the actor's negligence is the legal cause of bodily harm for which, even if nothing more were suffered, the other could recover damages. These injuries require the other to submit to medical, surgical, and hospital services. The services are so rendered as to increase the harm *or even to cause harm which is entirely different from that which the other had previously sustained.* In such a case, the damages assessable against the actor include not only the injury originally caused by the actor's negligence but also the harm resulting from the manner in which the medical, surgical, or hospital services are rendered, irrespective of whether they are rendered in a mistaken or negligent manner, so long as the mistake or negligence is of the sort which is recognized as one of the risks which is inherent in the human fallibility of those who render such services.

Restatement (Second) of Torts § 457 cmt. a (emphasis added).

6.     Because causation is established as a matter of law, we need not address Appellants' argument that the joint-versus-independent-tortfeasor distinction is a question of fact for the jury.

case. Although Smith obtained a full release, he would wind up having to litigate

the accident and defend a contribution and indemnity claim by Dr. Miller and YSA.

[¶12.]        Appellants released all persons from all claims that developed from the

accident. Because Haley's malpractice damages developed from the injuries

sustained in the auto accident, we conclude that the release applied to the

suboptimal recovery allegedly caused by the medical treatment of the accident

injuries. The circuit court correctly determined that the release barred Appellants'

claims as a matter of contract. In light of our interpretation of the contract,

Appellants' other arguments need not be addressed.[7]

---

7.      Appellants' authorities from other jurisdictions are inapposite. In *Posey v. Medical Center–West, Inc.*, 354 S.E.2d 417 (Ga. 1987), the Georgia Supreme Court held that the liability of two doctors and a hospital was not discharged by a release signed by the parents of a child struck by an automobile. *Id.* at 417. But in Georgia, unlike South Dakota, only the parties named in a release are discharged. *See Lackey v. McDowell*, 415 S.E.2d 902, 902 (Ga. 1992) (clarifying the decision in *Posey*). In *Galloway v. Lawrence*, 139 S.E.2d 761 (N.C. 1965), the court applied a stricter interpretation of North Carolina's joint-contribution-nonrelease rule. *Id.* at 763. *Contra Flynn*, 526 N.W.2d at 746. In *Neves v. Potter*, 769 P.2d 1047, 1054 (Colo. 1989) (en banc), and *Williams v. Physicians & Surgeons Community Hospital, Inc.*, 292 S.E.2d 705, 707 (Ga. 1982), parol evidence was admitted to show the signatories' intent because in those jurisdictions such evidence may be used when nonparties to a release claim coverage. Likewise, in *Pennington v. Bluefield Orthopedics, P.C.*, 419 S.E.2d 8, 12, 14 (W. Va. 1992), the court allowed parol evidence to ascertain the parties' intent in a settlement release that named only the original tortfeasor. However, South Dakota does not permit parol evidence in unambiguous releases. *See Flynn*, 526 N.W.2d at 746 (disallowing extrinsic evidence to contradict an unambiguous release). Finally, *Ash v. Mortensen*, 150 P.2d 876 (Cal. 1944), involved a release that was executed following a prior action that had proceeded to judgment. *Id.* at 877. Further, the analysis in *Ash* suggests that the language of that release only purported to release the negligent driver. Therefore, the issue in that case involved the rules of "full compensation or satisfaction" rather than the contractual scope of the release. *Id.* at 879.

[¶13.]    In their third issue, Appellants argue that the circuit court erred in denying their motion for a continuance to conduct additional discovery before ruling on the motion for summary judgment. The circuit court concluded that the language of the release was unambiguous and, therefore, that there were no additional facts regarding the parties' intent that were essential to discover in opposition to the motion for summary judgment. We agree.

[¶14.]    SDCL 15-6-56(f) authorizes a court to order a continuance to permit a party opposing summary judgment to conduct discovery when necessary to oppose the motion. *Dakota Indus., Inc. v. Cabela's.com, Inc.*, 2009 S.D. 39, ¶ 6, 766 N.W.2d 510, 512. Under the rule, "the facts sought through discovery must be essential to opposing the summary judgment[.]" *Id.*; SDCL 15-6-56(f). "A circuit court's refusal to grant additional discovery prior to awarding summary judgment is reviewed for abuse of discretion." *Stern Oil Co. v. Border States Paving, Inc.*, 2014 S.D. 28, ¶ 24, 848 N.W.2d 273, 281.

[¶15.]    Appellants sought additional time to depose Smith, Dawn, and the judge who approved the release in the conservatorship. Appellants sought to discover those individuals' subjective intent regarding who and what claims were to be released. However, as already explained, this is a case of contract interpretation—a question of law that is based on the language used in the contract rather than the parties' subjective belief. *Fenske Media Corp.*, 2004 S.D. 23, ¶ 8, 676 N.W.2d at 393; *see also Flynn*, 526 N.W.2d at 746 (rejecting a claim that the releasor was misled by her attorney where the language of the release was unambiguous—the language of the release controlled). Therefore, the additional

facts regarding subjective intent were not essential to resist the motion for summary judgment. "If the contract is plain and unambiguous[,] extrinsic evidence is not considered because the intent of the parties can be derived from within the four corners of the contract." *Kernelburner, L.L.C. v. MitchHart Mfg., Inc.*, 2009 S.D. 33, ¶ 7, 765 N.W.2d 740, 742. The circuit court did not abuse its discretion in denying Appellants' request for time to conduct additional discovery.

[¶16.] In their fourth issue, Appellants argue that the conservator court determined the release was only a partial release. Appellants point out that a court approving a minor's settlement is required to tend to the minor's best interest. Accordingly, Appellants contend that we must assume the conservator court determined that the release did not apply to future claims. Appellants further contend that the conservator court's future claim determination is res judicata, precluding the assertion of a release defense in this action.

[¶17.] This argument is speculative at best. Courts routinely approve broad, general releases in settlements not involving full compensation for all injuries sustained. Furthermore, the language of this release leaves no room for future claims. Finally, the circuit court noted that the conservator did not inform the conservator court that the money recovered in this settlement and the settlement with the underinsured carrier was not sufficient to fully compensate Appellants or that other defendants may have liability. Under these facts, we will not assume that there was a prior judicial determination barring a release defense.

[¶18.]    We affirm the circuit court's grant of summary judgment.  Because we affirm on that issue, we do not address Dr. Miller and YSA's statute-of-limitations issue raised by notice of review.

[¶19.]    GILBERTSON, Chief Justice, and SEVERSON, WILBUR, and KERN, Justices, concur.