#25864, #25869-a-SLZ

**2011 S.D. 64**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

PEARL NEUGEBAUER,                                        Plaintiff and Appellee,

   v.

LINCOLN J. NEUGEBAUER,                        Defendant and Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE  SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE PATRICIA C. RIEPEL
Judge

\* \* \* \*

TIM R. SHATTUCK of
Woods, Fuller, Shultz
  & Smith, PC
Sioux Falls, South Dakota                        Attorneys for plaintiff
                                                                 and appellee.


MICHAEL F. TOBIN of
Boyce, Greenfield, Pashby,
  & Welk, LLP
Sioux Falls, South Dakota

and

THOMAS J. NICHOLSON of
Nicholson & Nicholson
Sioux Falls, South Dakota                        Attorneys for defendant
                                                                 and appellant.

\* \* \* \*

ARGUED ON AUGUST 23, 2011

OPINION FILED **09/28/11**

#25864, #25869

ZINTER, Justice

[¶1.]        For almost twenty years, Lincoln Neugebauer rented his mother Pearl Neugebauer's farm under an oral lease.  In 2008, Lincoln purchased the farm by contract for deed.  Pearl later brought this action to rescind the contract on the ground of undue influence.  The circuit court found that Lincoln had exerted undue influence and the court rescinded the contract.  We affirm.

*Facts and Procedural History*

[¶2.]        Harold and Pearl Neugebauer owned a 159-acre farm the parties called the "Home Place."  The Hutchinson County farm included a house, garage, granary, machine sheds, barns, silos, and a dairy barn.  During their marriage, Harold handled all of the legal and financial affairs of the farm and family.  In 1980, Harold died, leaving Pearl as the sole owner of the Home Place and another farm property.  Following Harold's death, Lincoln, the youngest of Harold and Pearl's seven children, began farming both properties.  Lincoln also resided with his mother on the Home Place.

[¶3.]        In 1984, Lincoln and Dennis, one of Pearl's other sons, formed L&D Farms partnership for the purpose of managing the farming operation on Pearl's land.  L&D Farms entered into a ten-year lease with Pearl that included an option to purchase the Home Place for $117,000, the appraised value in 1984.  In 1985, Pearl moved from the farm to a home in Parkston.  In 1989, Lincoln and Dennis dissolved L&D Farms without exercising the option to purchase.

[¶4.]        After dissolution of the partnership, Lincoln farmed Pearl's land by himself.  He paid annual rent, but Lincoln and Pearl never reduced their oral farm

-1-

lease to writing. Pearl trusted Lincoln and left it to him to determine how much rent to pay. Pearl did, however, expect that Lincoln would be "fair." Pearl never took any steps to determine if the $6,320 annual rent Lincoln was paying was fair.

[¶5.]     On several occasions from 2004 to 2008, Lincoln privately consulted with attorney Keith Goehring about purchasing the Home Place. On December 3, 2008, Lincoln took Pearl to Goehring's office to discuss the purchase. Pearl, who only had an eighth-grade education, was almost eighty-four years old and was hard of hearing. Although Lincoln and Goehring discussed details of Lincoln's proposed purchase, Pearl said virtually nothing. She later testified that she could not keep up with the conversation and did not understand the terms discussed.

[¶6.]     On December 17, 2008, Lincoln again took Pearl to Goehring's office. On this occasion, Pearl and Lincoln executed a contract for deed that had been drafted by Goehring. Goehring had been retained and his fees were paid by Lincoln. Neither Lincoln nor Goehring advised Pearl that Goehring represented only Lincoln, and neither suggested that Pearl could or should retain her own legal counsel.

[¶7.]     There is no dispute that the fair market value of the Home Place was $697,000 in 2008 when the contract for deed was executed. Under the terms of the contract, Lincoln was to pay Pearl $117,000, the farm's 1984 appraised value. The contract price was to be paid over thirty years by making annual payments of $6,902.98.

[¶8.]     After executing the contract, Lincoln told Pearl not to tell the rest of her children about the agreement. Pearl later became suspicious that something

may have been wrong with the contract. In January 2009, Pearl's children returned to Parkston for a funeral. For the first time, Pearl revealed the contract to the rest of her children, and they explained the contract to her. She began to cry and wanted the contract torn up. Pearl personally and through her children asked Lincoln to tear up the contract. Lincoln refused.

[¶9.]     Pearl then brought this action for rescission of the contract for deed and damages for breach of the pre-contract oral lease. Pearl challenged the contract on the ground of undue influence. Her breach of lease claim was based on the assertion that Lincoln failed to pay her the full amount of rent that was owed. The parties tried the rescission claim to the court and the breach of lease claim to a jury. The jury found for Lincoln on the breach of lease claim, and the court found for Pearl on the rescission claim.

[¶10.]     With respect to rescission, the circuit court found that a confidential relationship existed between Pearl and Lincoln. The court further found that Lincoln actively participated in the contract's preparation and unduly profited from it. Based on these findings, the court determined that a presumption of undue influence arose shifting the burden of production to Lincoln to show that he took no unfair advantage of Pearl. The court found that Lincoln was unable to make that showing. Alternatively, the court found that even in the absence of a confidential relationship and the resulting presumption of undue influence, Pearl established the four elements of undue influence under SDCL 53-4-7, namely: Pearl's susceptibility to undue influence; Lincoln's opportunity to exert such influence and effect a wrongful purpose; Lincoln's disposition to do so for an improper purpose;

and a result clearly showing the effects of undue influence. Ultimately, the court rescinded the contract and ordered that the parties be restored to the status quo existing before the contract was executed. The court further ordered that Lincoln pay $6,320 annual rent in accordance with the terms of the prior oral lease for the time (2009 and 2010) he used and occupied the property under the rescinded contract for deed.[1]

[¶11.]    Lincoln raises one issue on appeal: whether the circuit court erred in finding that the contract for deed was a product of undue influence. Pearl raises one issue by notice of review: whether the court erred in ruling that following rescission, Lincoln was only obligated to pay $6,320 in annual rent for the time he occupied the property under the contract for deed.

*Decision*

[¶12.]    Our review in undue influence cases involves a mixed question of law and fact. *Stockwell v. Stockwell*, 2010 S.D. 79, ¶ 15, 790 N.W.2d 52, 58. Because undue influence is a non-technical, fact-based inquiry that requires the circuit court to examine the parties' states of mind and motives, this Court reviews a circuit court's application of law to the facts under the clearly erroneous standard. *Id.* ¶ 16. The circuit court's findings of fact are also reviewed for clear error. *Id.*

[¶13.]    Lincoln argues that he had no confidential relationship with his mother. He contends that the court erred in failing to consider the factors we have utilized to determine whether a confidential relationship exists. *See, e.g., In re*

---

1.    Because the contract for deed payments slightly exceeded the oral lease payments, the court did not order Lincoln to pay any additional rent for 2009 and 2010.

*Estate of Dokken*, 2000 S.D. 9, ¶ 30, 604 N.W.2d 487, 496 (examining the amount of time the parties spent with each other, whether the beneficiary handled many of the personal or business affairs of the party alleged to have been unduly influenced, and whether that party ever sought the advice of the beneficiary). Because Lincoln argues that no confidential relationship existed, he contends that the court erred in applying the presumption of undue influence.[2]

[¶14.] We decline to address these contentions because the court alternatively found that Pearl established the four elements of undue influence independent of a confidential relationship. These alternative findings are dispositive[3] because undue influence may be established in three ways, but only one requires proof of a confidential relationship. *See* SDCL 53-4-7.[4]

---

2. The presumption of undue influence is a mechanism that alters the burden of production. When the presumption arises, the burden of production shifts to the beneficiary to show he took no unfair advantage of the person who was allegedly unduly influenced. However, the ultimate burden of persuasion remains on the contestant to prove the elements of undue influence by a preponderance of the evidence. *Stockwell*, 2010 S.D. 79, ¶ 31, 790 N.W.2d at 63.

3. Lincoln argues that the circuit court's alternative ruling is not independent of the court's confidential relationship determination because confidential relationship language appears in various conclusions of law discussing the alternative ruling. However, the court's findings of fact (that do not refer to a confidential relationship) clearly establish undue influence under the four alternative factors. We conclude that the court's alternative ruling was independent of the ruling that a confidential relationship existed.

4. Undue influence occurs:

> (1) In the use, by one in whom a confidence is reposed by another, or who holds a real or apparent authority over him, of such confidence or authority for the purpose of obtaining an unfair advantage over him; or

(continued . . .)

-5-

[¶15.] Undue influence is defined by SDCL 53-4-7. This Court has identified the general elements on several occasions. *Nizielski v. Tvinnereim*, 453 N.W.2d 831, 833 (S.D. 1990). The elements are: (1) a person susceptible to undue influence; (2) another's opportunity to exert undue influence on that person to effect a wrongful purpose; (3) another's disposition to do so for an improper purpose; and (4) a result clearly showing the effects of undue influence. *Stockwell*, 2010 S.D. 79, ¶ 35, 790 N.W.2d at 64. The party alleging undue influence must prove these elements by a preponderance of the evidence. *Id.*

*Susceptibility to Undue Influence*

[¶16.] Lincoln argues that no evidence supported the court's finding that Pearl was susceptible to undue influence. He focuses on the absence of medical evidence regarding Pearl's mental functioning. Lincoln contends that in the absence of medical evidence of mental deficits, the court erred in finding that Pearl was susceptible to undue influence.

[¶17.] Concededly, "'physical and mental weakness is always material upon the question of undue influence.' Obviously, an aged and infirm person with impaired mental faculties would be more susceptible to influence than a mentally alert younger person in good health." *In re Estate of Metz*, 78 S.D. 212, 221, 100 N.W.2d 393, 398 (S.D. 1960) (quoting *Johnson v. Shaver*, 41 S.D. 585, 172 N.W. 676,

---

(. . . continued)
    (2) In taking an unfair advantage of another's weakness of mind; or
    (3) In taking a grossly oppressive and unfair advantage of another's necessities or distress.

SDCL 53-4-7.

678 (1919)). But this Court has not required medical evidence to prove susceptibility to undue influence. *See, e.g.*, *id.* (finding susceptibility to undue influence solely through inconsistent testamentary statements and admissions that the party allegedly influenced was senile, childish, and incompetent to attend to his business affairs).

[¶18.]    In this case, there was substantial non-medical evidence demonstrating Pearl's susceptibility to undue influence. Pearl had an eighth-grade education, and she lacked experience in business and legal transactions. When she signed the contract for deed, Pearl was almost eighty-four and hard of hearing. Pearl and Dennis testified that she had relied on her deceased husband to take care of all their business and legal matters during their marriage. This dependency continued after Harold's death. Pearl testified that, with the exception of her checking account and monthly expenses, she often asked her children for help with business and financial affairs, which she did not understand. Pearl's daughter Cheryl confirmed that Pearl's children had to explain such things as hospital bills, "documents," and Social Security because Pearl lacked experience with business matters. Further, Pearl, Dennis, and Cheryl testified that Pearl did not understand the contract for deed until they explained it to her after it had been executed. Susceptibility to undue influence may be established through such evidence of a party's limited education and business experience. *See Delany v. Delany*, 402 N.W.2d 701, 705-06 (S.D. 1987). We also note that Lincoln admitted Pearl had some mental impairment. He told Cheryl that Pearl was "slipping," meaning that Pearl would say something and a few minutes later repeat herself because she had

forgotten what she had said. The circuit court's finding that Pearl was susceptible to undue influence is not clearly erroneous.

*Opportunity to Exert Undue Influence*

[¶19.] Lincoln contends that the court's finding of opportunity to exert undue influence was erroneous because Lincoln and Pearl had no confidential relationship and Pearl had the ability to seek independent advice between the two meetings with Goehring, but chose not to do so. Lincoln relies on *In re Smid*, 2008 S.D. 82, ¶ 38, 756 N.W.2d 1, 13-14, for the proposition that the passage of fourteen days is ample time to seek independent legal advice concerning a transaction that is subsequently claimed to be voidable on the ground of undue influence. However, the *Smid* language upon which Lincoln relies related to the rules for rescission on the basis of mistake when one signs but does not read a contract. *Id.* ¶¶ 36-38. Those rules do not limit the ways in which the opportunity to exert undue influence may be established.

[¶20.] In this case, Pearl testified that Lincoln was her son and someone with whom she had previously lived for many years: someone she trusted to "do right." Lincoln conceded that on the date Pearl signed the contract, he knew Pearl trusted him and had confidence that he would treat her fairly in his business dealings with her. This type of trust and confidence by a mother in her son was sufficient to prove opportunity.

[¶21.] Additionally, there is no dispute that Lincoln had been seeking independent legal advice to acquire the farm for approximately four years. And when Lincoln finally decided to go through with the purchase, Pearl voluntarily

accompanied him to his lawyer's office.  At that point in her life, Pearl was elderly, hard of hearing, and had difficulty understanding the conversation.  The circuit court was free to adopt Pearl's testimony regarding her inability to understand the transaction over Goehring's perception of what he believed Pearl may have understood.  There is no clear error in the court's finding that Lincoln had the opportunity to exert undue influence over Pearl.

*Disposition to Exert Undue Influence*

[¶22.]     The court's finding that Lincoln had a disposition to exert undue influence for an improper purpose was also supported.  Lincoln had substantial experience in farmland transactions and real estate appreciation.  He collaborated with an attorney a number of times over four years to purchase the farm and draft the necessary documents.  Yet Lincoln did not have the farm appraised as he had previously done when farming the property with his brother.  Instead, Lincoln set the price at a value for which it had appraised twenty-four years earlier, a price that was one-sixth of its then current value.  He also took no steps to ensure that his elderly mother understood the contract terms, including the fact that considering her age and the thirty-year amortization, she would likely never receive a substantial portion of the payments.  Finally, neither Lincoln nor his attorney advised Pearl to seek legal representation.  "[T]he presence of independent legal advice [is] an important factor to be considered in determining whether undue influence exists."  *Kase v. French*, 325 N.W.2d 678, 681 (S.D. 1982).

[¶23.]     Lincoln's conduct after execution of the contract was also relevant to show disposition to exercise undue influence at the time the contract was executed.

*See In re Estate of Jones*, 320 N.W.2d 167, 170 (S.D. 1982). After this contract for deed was executed, Lincoln instructed Pearl not to tell her other children about the contract. Lincoln also declined to tell his siblings about the transaction before or after executing the contract even though the other children had raised the topic of selling the land to Lincoln. Lincoln did not disclose the sale until he was confronted about the matter. And, when asked by his mother and siblings to tear up the contract and work out a "fair deal," Lincoln refused.

[¶24.] The court finally observed that Lincoln historically took advantage of Pearl by paying her less than fair market rent under the oral lease. Lincoln, however, contends that this finding is at odds with the jury's verdict finding no breach of the oral contract to lease the land in prior years. Lincoln also points out that the court made a conflicting statement that Lincoln had paid Pearl a "fair amount of rent."[5]

[¶25.] With respect to the jury's verdict on Pearl's breach of contract claim, the jury was not asked to find whether Lincoln used undue influence to negotiate the terms of the oral lease. The jury was asked to determine whether the lease was breached, and its general verdict does not disclose the factual basis for its decision; e.g., whether its decision was based on Pearl's claims or on Lincoln's defenses. Therefore, it is impossible to ascertain whether the jury's verdict was inconsistent

---

5. Lincoln further points out that the court did not allow the breach of contract claim to go to the jury on the question of punitive damages. The court ruled that Lincoln had not acted "willfully or maliciously" in his dealings with his mother regarding the oral lease. This ruling is irrelevant. Malicious conduct suggests a more culpable state of mind than the disposition to exert undue influence.

with the court's finding that Lincoln had historically paid less than fair market rent, an act suggesting a disposition to take advantage of Pearl's trust. *See generally Williams v. First Gov't Mort. Corp.*, 225 F.3d 738, 748 (D.C. Cir. 2000) (concluding jury verdict did not support issue preclusion when jury did not specify which of two alternative theories to adopt and no one could say what the jury found the facts to be). In any event, the circuit court was the ultimate trier of fact with respect to the equitable claim of rescission. And any jury findings on the action for breach of contract, even if applicable to rescission, were only advisory. *Nizielski*, 453 N.W.2d at 834 (observing that generally "on equitable issues a jury's verdict is advisory only").

[¶26.]        We also see no inconsistency with respect to the court's statement that Lincoln had paid a fair amount of rent. That statement was made when the court was discussing the amount of rent Lincoln would be obligated to pay for 2009 and 2010 to restore the parties to the status quo existing before the court ordered rescission. The court rejected Pearl's request for fair market value rent during that period. Instead, the court concluded that $6,320, the amount of the oral lease, was necessary to restore the parties to the status quo before the contract for deed was executed. The court further noted that allowing Pearl fair market rent would have placed her in a better position than she was at the time she executed the contract for deed. In this context, the court's statement regarding a fair amount of rent paid under the oral lease cannot be construed to suggest Lincoln had not historically taken advantage of Pearl by paying less than fair market rent. The court was merely distinguishing between the amount of rent that would fairly restore the

parties to the status quo and the fair market rent that would put Pearl in a better position than if she had not executed the contract. The court did not clearly err in finding that Lincoln was disposed to exert undue influence.

*Result Showing Effects of Undue Influence*

[¶27.]        Finally, we see no clear error in the court finding a result clearly showing the effects of undue influence. By executing the contract for deed, Pearl sold her property for $580,000 less than its value. Not only was the contract price of $117,000 substantially below the market value of $697,000, the thirty-year payment term would have required Pearl to live to 114 years-of-age to receive the payments.

[¶28.]        Lincoln, however, argues that land transactions between family members do not always contemplate fair market value. He also argues that from a cash flow perspective, Pearl was not harmed. These arguments fail to acknowledge that Pearl was entitled to fairly choose whether to sell her farm for one sixth of its value thereby depriving her other children of a probable, substantial inheritance.

[¶29.]        In the final analysis, Lincoln's arguments are based on a version of the facts that was rejected by the circuit court. Further, this case is unusual in that the party alleged to have been unduly influenced was able to capably testify that she had been unduly influenced. The circuit court listened to the witnesses and made findings, including credibility determinations in which the court chose to believe Pearl instead of Lincoln. We find no clear error in the circuit court's findings of fact. We affirm its conclusion that rescission was warranted. We also find no merit in

Pearl's argument raised by notice of review.  The judgment of the circuit court is affirmed.

[¶30.]    GILBERTSON, Chief Justice, and KONENKAMP and SEVERSON, Justices, and MILLER, Retired Justice, concur.

[¶31.]    MILLER, Retired Justice, sitting for WILBUR, Justice, disqualified.