#28214-r-DG
**2018 S.D. 5**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

| | |
|---|---|
| KATHY A. SCHAEFER, | Plaintiff and Appellant, |
| v. | |
| SIOUX SPINE AND SPORT, PROF. LLC, | Defendant, |
| and | |
| NATHAN J. FLANDERS, | Defendant, Third-Party Plaintiff, and Appellee, |
| v. | |
| HERBERT TOLLEFSON, | Third-Party Defendant and Appellee. |

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOHN PEKAS
Judge
\* \* \* \*

| | |
|---|---|
| JAMI J. BISHOP<br>RONALD A. PARSONS, JR.<br>A. RUSSELL JANKLOW<br>SARA E. SHOW of<br>Johnson Janklow & Abdallah, LLP<br>Sioux Falls, South Dakota | Attorneys for plaintiffs and appellants. |
| MELANIE L. CARPENTER of<br>Woods, Fuller, Shultz & Smith, PC<br>Sioux Falls, South Dakota | Attorneys for defendant, third party plaintiff, and appellee Nathan Flanders. |

\* \* \* \*

ARGUED NOVEMBER 8, 2017
OPINION FILED **01/10/18**

HEIDI N. THOENNES of
American Family Insurance
Legal Department
West Des Moines, IA

Attorney for third party
defendant and appellee
Herbert Tollefson.

#28214

GILBERTSON, Chief Justice

[¶1.] Kathy A. Schaefer filed an action against Nathan J. Flanders alleging negligence. The circuit court granted summary judgment in favor of Flanders on the basis of a release signed by Schaefer. Schaefer argues there are genuine issues of material fact as to whether her consent to the release was based on mistake and obtained by undue influence. She also argues there is a genuine issue of material fact as to whether the injury forming the basis for this negligence action was known at the time she signed the release. We reverse.

**Facts and Procedural History**

[¶2.] On June 9, 2013, 55-year-old Kathy Schaefer was a passenger in the front seat of a vehicle driven by her boyfriend, Herbert Tollefson. Tollefson attempted to turn left onto 85th Street in Sioux Falls. However, rather than using the left-turn lane, Tollefson stopped in a through-traffic lane. Tollefson's vehicle was struck from behind by a vehicle operated by Nathan Flanders. Flanders claimed that he looked down at his speedometer while accelerating and that when he looked up again, Tollefson's vehicle was stopped in front of him. Law enforcement cited Tollefson for unsafe lane usage and Flanders for careless driving. Flanders ultimately pleaded guilty to following Tollefson's vehicle too closely.

[¶3.] At the accident scene, Schaefer complained of pain in her neck and back. Schaefer was transported by ambulance to Avera McKennan Hospital where she complained of pain in her neck and ribs. She denied having a "headache, midsternal chest pain, nausea, vomiting, fever, chills, abdominal pain, back pain or extremity pains." The treating physician ordered an x-ray, which did not reveal any injury. Schaefer was diagnosed with an "acute cervical sprain" and a "mild chest

-1-

wall contusion." The physician prescribed medication for Schaefer's pain, and she returned home. Schaefer believed that her care providers did not find any evidence of injury on her chest x-ray. Following her discharge, Schaefer did not experience chest pain.

[¶4.] Two days after the collision, Dustin Parris, a claims adjuster for Flanders's automobile-insurance provider, Farmers Insurance Group, contacted Schaefer. Parris's notes from that conversation indicate Schaefer suffered from neck and back pain and "[c]hest pain from seatbelt." Schaefer and Parris met two weeks later, on June 25. According to Parris, Schaefer reported she was "still having pain in the neck and upper [trapezius] on both sides." But Parris's notes did not indicate that Schaefer described any chest pain. The two discussed a potential settlement, and Parris asked Schaefer for a demand. According to Parris, Schaefer, who had been receiving Social Security Disability Insurance (SSDI) benefits for an intellectual disability since before the collision, "had no idea as she has had no prior claims knowledge." Parris offered Schaefer $500 for "[g]enerals and [f]uture meds" and up to $3,000 for her initial treatment costs.

[¶5.] In exchange for $500 and reimbursement of up to $3,000 in medical bills, Farmers Insurance wanted Schaefer to sign a release. Under the release, Schaefer would

> forever release, acquit and discharge Nate Flanders, Melinda
> Flanders, Alexandria Flanders, James Flanders, Abigail
> Flanders, Herbert Tollefson, American Family Mutual
> Insurance Company, and his/her/their agents, successors, heirs,
> executors, administrators, and assigns, from any and all claims,
> causes of action, actions, rights, demands, bodily injuries,
> personal injuries, damages including but not limited to any and
> all medical expenses wherever incurred and loss of wages and/or

income, loss of consortium, loss of any services, other costs and expenses, and any other compensation of any kind, which the undersigned has incurred on account of or which are in any way related to an accident that occurred on or about June 9, 2013, at or near Souix [sic] Falls, SD.

Without consulting an attorney (or anyone else), Schaefer agreed to sign the release. At the time Schaefer signed the release, she had already received bills from Avera totaling more than $5,000. After learning the amount of Schaefer's existing medical expenses, Farmers Insurance increased the allowance from $3,000 to $8,000. Parris called Schaefer on June 28 to discuss signing a new release, and the two agreed to meet on July 1.

[¶6.]	After signing the second release, Schaefer sought chiropractic treatment for her neck pain from Dr. Wade T. Scheurenbrand at Sioux Spine & Sport in Sioux Falls. On July 10, during her second treatment, Dr. Scheurenbrand performed a chest compression on Schaefer, who experienced a sharp, severe pain in her right shoulder and neck. Schaefer's pain did not subside, and on July 18, she returned to the emergency room by ambulance. Schaefer told emergency-room staff that the pain radiated up to her neck and down her arm into the chest wall. She rated her pain as 10 out of 10. Schaefer's treating physician ordered a CT scan of her neck and chest, which revealed a nondisplaced sternal fracture and body fracture with hematoma. Schaefer was admitted to the hospital, where she developed a staph infection and abscess. As a result, she spent a month in the hospital, and her medical bills totaled over $400,000.

[¶7.]	Schaefer filed an action on January 19, 2015, against Sioux Spine & Sport alleging professional negligence. After conducting some initial discovery, Schaefer amended her complaint, adding a negligence claim against Flanders.

Flanders filed a cross-claim against Sioux Spine & Sport. He also filed a third-party complaint alleging negligence against Tollefson. On December 12, 2016, Flanders filed a motion for summary judgment on Schaefer's negligence claim against him. Tollefson joined Flanders's motion for summary judgment. And on January 19, 2017, Flanders filed a motion to strike Schaefer's SSDI documentation from the record, arguing that it lacked foundation and that it was hearsay. Schaefer responded with a motion to supplement the record, intending to obtain and submit affidavits from the Social Security Administration. The court did not rule on the motions relating to Schaefer's SSDI documentation, but after a hearing on January 23, 2017, the court issued a memorandum opinion granting Flanders's motion for summary judgment.

[¶8.] On April 6, 2017, Schaefer requested permission to file an intermediate appeal under SDCL 15-26A-3(6), which this Court granted on May 12, 2017.[1] On appeal, Schaefer raises the following issue: Whether the circuit court erred by granting summary judgment on Schaefer's negligence claim against Flanders.[2]

---

1. Schaefer's negligence claim against Sioux Spine & Sport was not part of the motion for summary judgment.

2. Schaefer also argues on appeal that the circuit court erred by not ruling on her motion to supplement the record prior to ruling on the motion for summary judgment. Because we hold the court erred by granting summary judgment, we do not reach this issue.

## Standard of Review

[¶9.]     "The judge's function at the summary judgment stage . . . is not to weigh the evidence and determine the matters' truth." *Hamilton v. Sommers*, 2014 S.D. 76, ¶ 42, 855 N.W.2d 855, 868.  Instead, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." SDCL 15-6-56(c).  The party opposing summary judgment need only "substantiate [her] allegations with sufficient probative evidence that would permit a finding in [her] favor on more than mere speculation, conjecture, or fantasy." *Peters v. Great W. Bank, Inc.*, 2015 S.D. 4, ¶ 13, 859 N.W.2d 618, 624 (quoting *Estate of Elliott ex rel. Elliott v. A & B Welding Supply Co.*, 1999 S.D. 57, ¶ 16, 594 N.W.2d 707, 710).  "We view the evidence 'most favorably to the nonmoving party and resolve reasonable doubts against the moving party.'" *Gades v. Meyer Modernizing Co.*, 2015 S.D. 42, ¶ 7, 865 N.W.2d 155, 158 (quoting *Peters*, 2015 S.D. 4, ¶ 5, 859 N.W.2d at 621).  However, "[a] release is a contract," and "[c]ontract interpretation is a legal question we review de novo." *Gores v. Miller*, 2016 S.D. 9, ¶ 8, 875 N.W.2d 34, 36-37.

## Analysis and Decision

[¶10.]     Schaefer argues summary judgment was inappropriate under several theories.  First, she contends the release is rescindable under SDCL 53-11-2(1) because Parris unfairly persuaded her to sign it.  Second, she contends the release is rescindable under SDCL 53-11-2(1) because she gave her consent by mistake.

Third, she contends the release is a general release under SDCL 20-7-11. According to Schaefer, her sternal fracture was not a known injury at the time she signed the release; therefore, she concludes that even if the release is not rescindable, it does not apply to her sternal fracture. Because the circuit court granted summary judgment based solely on application of the release, summary judgment is precluded if there are genuine issues of material fact as to any one of these arguments. If the requirements of SDCL 53-11-2(1) are met, then the release is void. If the requirements of SDCL 20-7-11 are met, then the release simply does not apply.

[¶11.] Schaefer first contends that Parris unfairly persuaded her to consent to the release and that the release is therefore rescindable. Under SDCL 53-11-2(1), "[a] party to a contract may rescind the same . . . [i]f consent of the party rescinding . . . was . . . obtained through . . . undue influence[.]" Among other instances, "[u]ndue influence consists . . . [i]n taking an unfair advantage of another's weakness of mind[.]" SDCL 53-4-7(2).

> Influence, to be undue, must be of such character as to destroy the free agency of the [consenting party] and substitute the will of another person for [her] own. Its essential elements are (1) a person susceptible to such influence, (2) opportunity to exert such influence and effect the wrongful purpose, (3) a disposition to do so for an improper purpose, and (4) a result clearly showing the effect of such influence.

*In re Estate of Metz*, 78 S.D. 212, 214-15, 100 N.W.2d 393, 394 (1960) (citation omitted);[3] *see also Neugebauer v. Neugebauer*, 2011 S.D. 64, ¶ 15, 804 N.W.2d 450,

---

3.     The parties' arguments invite a question regarding the application of these elements in the present case: Does an undue-influence claim under SDCL 53-

(continued . . . )

454; Restatement (Second) of Contracts § 177 & cmt. a (Am. Law Inst. 1981) ("Undue influence is unfair persuasion of a party who is under the domination of the person exercising the persuasion . . . ."). Because Schaefer has the burden of proving these elements, she must raise a genuine issue of material fact as to each in order to survive summary judgment.

[¶12.]       Schaefer must first raise a genuine issue of material fact as to whether she was susceptible to undue influence. *Estate of Metz*, 78 S.D. at 215, 100 N.W.2d at 394. "Susceptibility to influence does not mean mental or testamentary incapacity. In fact, the application of undue influence presupposes mental competency." *Id.* at 221, 100 N.W.2d at 398. Even so, "physical and mental weakness is always material upon the question of undue influence." *Neugebauer*, 2011 S.D. 64, ¶ 17, 804 N.W.2d at 454 (quoting *Estate of Metz*, 78 S.D. at 221, 100 N.W.2d at 398). "[T]his Court has not required medical evidence to prove susceptibility to undue influence." *Id.*

[¶13.]       In this case, Schaefer asserted to the circuit court that she has an intellectual disability. In order to qualify for SSDI benefits, Schaefer underwent memory and IQ testing. Schaefer provided the court with the written opinion of Dr. Doug Soule. In his report, Dr. Soule indicated that Schaefer's memory scores were "'below extremely low' range" and that she exhibited "poor judgment insight" and "impulsivity problems." Schaefer also contends that her susceptibility to influence

---

(. . . continued)
4-7(2) require proof that the influencing party knew of the consenting party's weakness of mind? The parties each touch on this issue but do not directly engage in argument on it or cite relevant authority. Therefore, this issue is not addressed in this opinion.

is evidenced by the fact that she signed the release even though she was already in possession of medical bills that exceeded the amount of reimbursement permitted under the release. Finally, she also points to her deposition testimony, in which she denied understanding what the release meant. According to Schaefer, "they just told me to sign [the release] and I signed." Viewed in a light most favorable to Schaefer, these assertions raise a genuine issue of material fact as to whether she was susceptible to undue influence.

[¶14.] There are also genuine issues of material fact as to the remaining elements of undue influence. Parris and Schaefer met and spoke several times. Parris first contacted Schaefer only two days after the collision. Despite Schaefer telling Parris that she had no experience with the claims process, he immediately asked her for a demand. Although Schaefer informed Parris that she had a bill from Avera and that she had forwarded it to his company, he offered a settlement amount before ever viewing that bill, which was considerably greater than the settlement amount offered. Viewed in a light most favorable to Schaefer, these assertions raise genuine issues of material fact as to whether Parris had an opportunity and the disposition to unduly influence Schaefer. And the result of such influence is clear: Schaefer signed every release presented to her by Parris. Therefore, there are genuine issues of material fact regarding Schaefer's undue-influence theory, and the circuit court erred by granting summary judgment.

[¶15.] Schaefer's remaining theories are interrelated. Under SDCL 53-11-2(1), "[a] party to a contract may rescind the same . . . [i]f consent of the party rescinding . . . was given by mistake[.]" A mistake of fact is defined in part as "a

mistake not caused by the neglect of a legal duty on the part of the person making the mistake and consisting in . . . [a]n unconscious ignorance or forgetfulness of a fact, past or present, material to the contract[.]" SDCL 53-4-9(1). And under SDCL 20-7-11, "[a] general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor." Although SDCL 53-11-2(1) and SDCL 20-7-11 operate in different ways (the former actually voids the release whereas the latter only limits its application), these two statutes can have the same effect: preventing the application of a release to a particular claim. Thus, this Court regularly invokes SDCL 20-7-11 in deciding rescission-of-release cases under SDCL 53-11-2(1). *See, e.g.*, *Boman v. Johnson*, 83 S.D. 265, 267-68, 158 N.W.2d 528, 530 (1968). In essence, an unknown claim within the meaning of SDCL 20-7-11 can be a mistake of fact under SDCL 53-4-9. *See Parkhurst v. Burkel*, 1996 S.D. 19, ¶¶ 12-19, 544 N.W.2d 210, 212-14 (applying SDCL 20-7-11 to rescission analysis); *Boman*, 83 S.D. at 267-68, 158 N.W.2d at 530.

[¶16.] The primary question under Schaefer's second and third theories, then, is whether her sternal fracture was a known injury at the time she signed the release. An unknown injury is different than an unexpected consequence of a known injury. *Parkhurst*, 1996 S.D. 19, ¶ 15, 544 N.W.2d at 213. Similarly, "[a] misdiagnosed injury does not equate with 'unknown injury' as contemplated by SDCL 20-7-11[.]" *Id.* ¶ 19, 544 N.W.2d at 214. The question is whether Schaefer's "injuries were any different when she filed this action than when she executed the release." *Id.*

[¶17.]     A review of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," SDCL 15-6-56(c), indicates there is a genuine issue of material fact as to whether Schaefer's sternal fracture was a known injury at the time she signed the release.  In her statement of disputed material facts, Schaefer alleged the following:

> 1.  Kathy's condition was asymptomatic after the date of the accident until the date of the release.
>
> . . . .
>
> 3.  Kathy's chest injury was unknown and not contemplated by the release.
>
> 4.  Both Kathy and Parris on behalf of Farmers Insurance made the agreement in the release based upon the mistake of fact that Kathy's chest was not injured in this collision other than some bruising from her seatbelt.
>
> . . . .
>
> 6.  Kathy did not have any symptoms of a fracture in her chest and after the initial collision did not continue to experience pain in her chest.

These assertions are supported by Schaefer's and Parris's deposition testimony. Schaefer stated that other than the pain in her neck and minor pain where her seatbelt restrained her, she did not experience any other pain after the accident. Parris testified that although Schaefer reported some chest pain two days after the accident, she was no longer complaining of any chest pain two weeks later at their June 25 meeting.  And as noted above, the tests conducted on Schaefer during her initial visit to the emergency room, including an x-ray of her chest, did not indicate a sternal fracture.

[¶18.]     Even so, Flanders and Tollefson contend this case is analogous to *Parkhurst v. Burkel*, 1996 S.D. 19, 544 N.W.2d 210.  In that case, Parkhurst settled

with Burkel and released him from all claims arising from an automobile accident in which Burkel's vehicle struck Parkhurst's. *Id.* ¶ 2, 544 N.W.2d at 211. Following the accident, Parkhurst developed severe pain in her right hip, which she "described . . . to no less than six different medical providers, attributing the commencement of the symptoms to a time prior to her executing the release." *Id.* ¶ 17, 544 N.W.2d at 214. Although Parkhurst claimed that "her physicians had assured her [the pain] was related to her pregnancy[,]" she was diagnosed with a chip fracture in her right hip several months after signing the release. *Id.* ¶¶ 3, 11, 544 N.W.2d at 211-12. Parkhurst brought an action against Burkel, who was granted summary judgment. This Court affirmed because although Parkhurst's injury was misdiagnosed, it "was certainly discovered by [Parkhurst] prior to [her signing the] release." *Id.* ¶ 17, 544 N.W.2d at 214.

[¶19.]	Flanders and Tollefson's reliance on *Parkhurst* is misplaced. In that case, Parkhurst's own testimony established that she discovered her injury prior to signing the settlement agreement. *Id.* ¶ 19, 544 N.W.2d at 214. Thus, there was no factual dispute as to whether the injury at issue was known to the plaintiff at the time of settlement. The injury at issue in the present case is Schaefer's sternal fracture. In contrast to *Parkhurst*, Schaefer never testified that she experienced pain in her sternum prior to signing the release at issue in this case. Although Schaefer initially reported having some "chest pain," this is a general term used by lay persons to indicate anything from a sternal fracture to a bruised rib or the onset of a heart attack. Moreover, during her initial visit to the emergency room, Schaefer specifically denied having pain in her sternum. So in contrast to

*Parkhurst*, the present case presents a genuine issue of material fact as to whether Schaefer knew of her sternum injury prior to signing the release.

[¶20.]     The foregoing is sufficient to "permit a finding in [Schaefer's] favor on more than mere speculation, conjecture, or fantasy[,]" *Peters*, 2015 S.D. 4, ¶ 13, 859 N.W.2d at 624 (quoting *Estate of Elliott*, 1999 S.D. 57, ¶ 16, 594 N.W.2d at 710), as to whether her sternal fracture was a known injury at the time she signed the release. However, this does not end the analysis. "[A] mistake alone does not automatically warrant rescission of the contract." *Knudsen v. Jensen*, 521 N.W.2d 415, 418 (S.D. 1994).

> A mistake as to a matter of fact . . . must be material, and the fact must be such that it animated and controlled the conduct of the party. It must go to the essence of the object in view, and not be merely incidental. The court must be satisfied, that but for the mistake the complainant would not have assumed the obligation from which he seeks to be relieved.

*Beatty v. Depue*, 78 S.D. 395, 403-04, 103 N.W.2d 187, 191-92 (1960) (quoting *Grymes v. Sanders*, 93 U.S. 55, 60, 23 L. Ed. 798 (1876)); *accord* SDCL 20-7-11 (restricting application of general release when an unknown claim would have materially affected the settlement if it had instead been known). The question, then, is whether Schaefer would have signed the release had she known that her sternum had been fractured in the accident. Flanders's statement of undisputed facts does not address this question. Considering the extent of Schaefer's costs and suffering and the relatively small amount she received in settlement, there is at least a reasonable doubt as to whether she would have settled had she known about the sternal fracture. On summary judgment, reasonable doubts are resolved against the moving party. *Gades*, 2015 S.D. 42, ¶ 7, 865 N.W.2d at 158. Therefore,

there are genuine issues of material fact regarding Schaefer's remaining theories, and the circuit court erred by granting summary judgment.

## Conclusion

[¶21.]     There is a genuine issue of material fact as to whether Parris secured Schaefer's consent by undue influence. There are also genuine issues of material fact as to whether Schaefer's sternal fracture was a known injury at the time she consented to the release and as to whether she would have signed the release had her injury been known. Therefore, there is a genuine issue of material fact as to whether the release precludes Schaefer's claim. As a result, the circuit court erred by granting Flanders's motion for summary judgment.

[¶22.]     We reverse.

[¶23.]     ZINTER, SEVERSON, KERN, and JENSEN, Justices, concur.